CÍA. AZUCARERA DEL TOA, INC., peticionaria, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; TESORERO DE PUERTO RICO, interventor.

Núm. 250.—*Sometido:* Junio 7, 1951. *Resuelto:* Diciembre 20, 1951.

910

*Diego Guerrero Noble*, abogado de la peticionaria; *Hon. Procurador General Víctor Gutiérrez Franqui (Vicente Géigel Polanco, Ex Procurador General,* en el alegato) y *J. C. Santiago Matos* y *J. B. Fernández Badillo, Procuradores Generales Auxiliares,* abogados del interventor, querellado en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR TODD, JR., emitió la opinión del tribunal.

El Tesorero de Puerto Rico, en abril y julio del año 1941, notificó a la aquí peticionaria deficiencias en contribuciones sobre ingresos, más intereses y penalidades, para los años 1935, 1937, 1938 y 1939 ascendentes a $12,321.15, $6,718.24, $27,834.67 y $5,339.79, respectivamente. Determinó, además, que para el año terminado en 30 de junio de 1936 resultaba un reintegro a favor de la peticionaria ascendente a $250.20. Sin embargo, no se procedió a acreditar o a reintegrar alegando como razón el Tesorero que había transcurrido el término de cuatro años que dispone la sección 64 (b) de la Ley de Contribuciones sobre Ingresos, desde la fecha del pago en marzo 3, 1937.

La contribuyente, por conducto del contador público autorizado Gonzalo Aponte, solicitó del Tesorero el 7 de mayo de 1941 una vista administrativa para discutir la deficiencia del año 1935. El 16 de julio de 1941, representada también por Gonzalo Aponte, solicitó vista administrativa para discutir las deficiencias correspondientes a los otros años contributivos.

Las solicitudes de vistas administrativas las hizo la peticionaria en un impreso suministrado por el Departamento de Hacienda, en el penúltimo párrafo del cual aparecía lo siguiente: "Hago constar que renuncio expresamente al período de prescripción en este caso..."

Dichos impresos o solicitudes aparecen suscritos bajo juramento por el propio Gonzalo Aponte ante un funcionario del Negociado de Contribución sobre Ingresos del Departamento de Hacienda. Debido a la cuestión de prescripción planteada es conveniente hacer un historial del proceso del caso en la vía administrativa.

El Tesorero señaló para el 1ro. de octubre de 1941 la vista administrativa para discutir las deficiencias notificadas, pero en septiembre 23 de 1941, Gonzalo Aponte solicitó que dicha vista fuera pospuesta para la segunda quincena

del mes de noviembre. Conforme con esta solicitud, el Tesorero señaló la vista para noviembre 5 de 1941. En octubre 28 de 1941 la contribuyente solicitó otra posposición de la vista, a la cual accedió el Tesorero y la señaló nuevamente para el 26 de noviembre de 1941.

El 17 de noviembre de 1941, José H. Belaval, contador de la oficina de Gonzalo Aponte, solicitó nueva posposición de la vista administrativa, la cual fué señalada para el 9 de enero de 1942. Sin embargo, el 14 de enero de 1942 el Tesorero hizo un nuevo señalamiento para el 29 de enero del mismo año, fecha en que se celebró la vista.

El 22 de diciembre de 1942, Gonzalo Aponte se dirigió al Tesorero interesando se resolviese el caso y después de esa fecha la contribuyente escribió al Tesorero dos veces más haciendo igual solicitud.

No fué hasta el 12 de julio de 1944, más de dos años después, que el Tesorero comunicó a la contribuyente el resultado de la vista administrativa celebrada el 29 de enero de 1942. Se determinó una rebaja en el ingreso tributable en todos los años en controversia.

El 28 de julio de 1944 la contribuyente solicitó la reconsideración de la resolución dictada el 12 de julio del mismo año y el 4 de agosto de 1944 el Tesorero accedió a la reconsideración solicitada y el 20 de septiembre de 1944 se celebró la vista en reconsideración.

El 24 de abril de 1945 la contribuyente le escribió al Tesorero solicitando la resolución del caso a la mayor brevedad posible y en diciembre 27 de 1945, la contribuyente, a través del contador Gonzalo Aponte, le llama la atención al Tesorero en cuanto a que, con relación a las deficiencias para los años 1935, 1937 y 1938, "el término que concede la sección 60(a)(1) de la Ley de Contribuciones sobre Ingresos, núm. 74 de 1924, enmendada, para imponer... la contribución en estos casos venció en el mes de septiembre de 1942, 1944 y 1945, respectivamente, por lo que, a tenor con lo resuelto por el Tribunal de Contribuciones de Puerto Rico en

el caso de Sucn. José Rexach, solicitamos que ese Departamento ordene la cancelación definitiva de las deficiencias por los años 1935, 1937 y 1938."

De nuevo el 27 de enero de 1947 la aquí peticionaria se dirigió por carta al Tesorero recordándole que la vista en reconsideración de septiembre 20 de 1944 tenía más de dos años de celebrada y suplicaba su resolución.

No fué hasta el 6 de febrero de 1948 que el Tesorero resolvió la reconsideración solicitada y de nuevo redujo el monto del ingreso neto de la peticionaria, especialmente en la deficiencia del año 1938, donde la rebaja fué mayor, o sea, de $257,818.43 como ingreso neto originalmente calculado, a $89,136.56 en que quedó el ingreso neto sujeto a contribución, de acuerdo con la resolución de 6 de febrero de 1948. Las nuevas deficiencias, intereses y penalidades notificadas ascendieron a $14,376.46 para el año 1935; $171.03 para el año 1937; $73.06 para el año 1938, y $2,647.55 para el año 1939. Se determinó una contribución pagada en exceso de $1,081.99 para el año 1936, no reintegrable ni acreditable por el motivo antes expuesto. De la referida resolución de 6 de febrero de 1948 fué que la contribuyente acudió el 12 de febrero de 1948 para ante el Tribunal de Contribuciones.

En la querella radicada alegó:

(a) Que el Tesorero había dejado transcurrir el período de siete años para tasar la contribución—sección 60 (a) (1) de la Ley de Contribuciones sobre Ingresos.

(b) Que habiendo el Tesorero declarado voluntariamente un reintegro a su favor para el año 1936, no estaba prescrito el referido reintegro, ya que el período de cuatro años empezaba a contarse desde que el querellado notificó su resolución final de febrero 6, 1948.

(c) Que de resolverse en su contra la alegación de prescripción, entonces resultaría, con motivo de la cantidad a reintegrarse para el año 1936, una rebaja de la deficiencia para el año 1935, de acuerdo a la teoría de reconvención (recoupment).

(*d*) Que el Tesorero había aumentado el ingreso de 1939 indebidamente, en cuanto a la cantidad de $11,390.46 que, según la contribuyente, era una rebaja en el inventario de azúcares excedentes, hecho para ajustar su inventario de azúcar al valor neto en el mercado a junio 30 de 1939.

El Tesorero contestó la querella aceptando algunos y negando otros de los hechos esenciales, alegando además que si no procedió a tasar la contribución por la vía de emergencia fué por haber sido inducido por la actuación de la querellante al renunciar expresamente al período de prescripción al solicitar la vista administrativa.

El Tribunal de Contribuciones declaró sin lugar la alegación de prescripción sosteniendo que la querellante la había renunciado y resolvió además que ésta no tenía derecho al reintegro ni a invocar la doctrina de *recoupment* y, en cuanto a la cantidad de $11,390.46 por alegada pérdida en el ajuste del inventario de azúcares para 1939, que no se había probado tal pérdida.

Expedimos el auto de *certiorari* en este caso para revisar la resolución del Tribunal de Contribuciones.

Sostiene la peticionaria que el tribunal inferior erró al resolver las cuatro cuestiones envueltas en el caso. Las consideraremos y resolveremos en el mismo orden en que han sido planteadas.

I

■ En cuanto a la prescripción, dispone el inciso (*b*) de la sección 61 de la Ley de Contribuciones sobre Ingresos lo siguiente: "Cuando ambos, el Tesorero y el contribuyente, hubieren acordado por escrito imponer la contribución después de transcurrido el período fijado por la sección 60 para la imposición de la misma, ésta podrá ser impuesta en cualquier momento antes del vencimiento del período acordado."

La sección 60 (*a*) (1) dispone:

"Sección 60.—(*a*) Excepto lo que dispone la Sección 61 y la Subdivisión (*c*) de la Sección 57 y la Subdivisión (*b*) de la Sección 62:

"(1) La contribución sobre ingresos impuesta por esta Ley se tasará dentro de los siete (7) años después de haberse radicado la declaración y no podrá entablarse un procedimiento judicial para el cobro de dicha contribución después de vencido dicho período."

Arguye la peticionaria que el firmar y jurar los documentos solicitando las vistas administrativas, no obstante contener los mismos la frase: "Hago constar que renuncio expresamente al período de prescripción en este caso", no constituyó el acuerdo sobre renuncia de prescripción que establece la sección 61(b), supra, porque la supuesta renuncia (waiver): (1) es ambigua, confusa e incierta; (2) no tiene término fijo de expiración ni dice a qué período de prescripción se está renunciando, y (3) no está firmada por el Tesorero pues sólo contiene el juramento del contribuyente.

En relación con esta cuestión hemos resuelto que aun en ausencia de la renuncia de prescripción a que se refiere la sección 61(b), supra, el término prescriptivo puede entenderse prorrogado si la conducta del contribuyente solicitando prórrogas y haciendo promesas de pago que no cumplió, da lugar a que el Tesorero, confiando en tales promesas, deja expirar el término fijado por ley. *Sucrs. de J. González & Co.* v. *Buscaglia, Tes.*, 63 D.P.R. 253. Y en el caso de *Buscaglia* v. *Tribl. de Contribuciones*, 67 D.P.R. 693, aplicando la sección 61(b), interpretamos el alcance de varias cláusulas de un convenio sobre renuncia del término prescriptivo cuando el contribuyente fué instado por el Tesorero a firmarlo como condición para concederle una vista administrativa y resolvimos que si el contribuyente limita su renuncia a determinado término y el Tesorero la acepta en la forma limitada, viene obligado por ella. Posteriormente, en el caso de *Sucrs. de Sobrino & Cía.* v. *Tribl. Contribuciones*, 68 D.P.R. 874, 879, en vista del resultado a que se llegó en cuanto a la falta de causa de acción a favor de la contribuyente, no se entró a considerar si ella renunció al término prescriptivo al solicitar la reconsideración de una notificación de deficiencia y

una vista administrativa en un documento que contenía la misma frase objeto de controversia en el presente.

Aun cuando presumiblemente podríamos disponer de la cuestión de prescripción a base de la doctrina sobre impedimento establecida en el de *Sucrs. de J. González & Co.* v. *Buscaglia, Tes.*, supra, preferimos entrar a considerar en su fondo las distintas cuestiones planteadas por la peticionaria impugnando la validez de su renuncia al término de prescripción.

Se ha resuelto en relación con disposición similar en las Leyes Federales sobre Ingresos a la contenida en la sección 61(b), supra, que esa renuncia o "waiver" no constituye un contrato ni tiene que estar redactada con las formalidades de uno o en alguna forma en particular. *Florsheim Bros Co.* v. *United States*, 280 U. S. 453; *Stange* v. *United States*, 282 U. S. 270; *Sabin* v. *United States*, 44 F.2d 70 (C.C., 1930); *Shambaugh* v. *Scofield*, 132 F.2d 345 (C.C.A. 5, 1943); *United States* v. *Gayne*, 137 F.2d 522 (C.C.A. 2, 1943); 10 Mertens, *Law of Federal Income Taxation* 224, sec. 57.47; 232, sec. 57.53.

No podemos convenir con la peticionaria en que su renuncia es ambigua, confusa e incierta por el hecho de que en la frase "Hago constar que renuncio expresamente al término de prescripción en este caso" no se dice a qué término de prescripción se estaba refiriendo la contribuyente. Al solicitar la reconsideración de las deficiencias de su contribución sobre ingresos notificadas y la celebración de una vista administrativa es obvio que únicamente podría estarse refiriendo al término prescriptivo provisto en la sección 60(a)(1), supra.

Sostiene la peticionaria que la renuncia es nula por no haberse fijado un período dentro del cual debía imponerse la contribución, según requiere la sección 61(b) al disponer que ésta podía ser impuesta en cualquier momento "antes del vencimiento del período acordado". Es cierto que, como sucedió en el caso de *Buscaglia* v. *Tribl. de Contribuciones*, su-

pra, las partes pueden fijar por escrito los términos y condiciones bajo los cuales se hace la renuncia por el contribuyente y la misma es aceptada por el Tesorero. Empero, esto no significa que el hecho de no fijarse ese término haga ineficaz la renuncia. Se ha resuelto que en esa situación se considera que el término prescriptivo se ha extendido (1) por un tiempo razonable, o (2) hasta que ha sido terminado por cualquiera de las partes previa notificación razonable. Lo que constituye un tiempo razonable depende de los hechos de cada caso en particular. Como dice Mertens, ob. cit., pág. 225: "...La cuestión principal es si bajo todas las circunstancias se actuó dentro de un tiempo razonable. Cuando el contribuyente por medio de peticiones, apelaciones, reclamaciones de créditos o peticiones de reconsideración ha dilatado la tasación o cobro de la contribución (el Comisionado propiamente esperando el resultado de la litigación) el contribuyente no puede decir que un tiempo irrazonable ha expirado. Este principio se está aplicando extensivamente; sólo leve prueba ha sido requerida de la actividad del contribuyente con el fin de retardar la tasación o el cobro de la contribución, para justificar una limitación sustancial de la expiración de una renuncia ilimitada (unlimited waiver)."

Sostienen esta doctrina, entre otros, los casos de *Greylock Mills* v. *White*, 63 F.2d 866 (C.C.A. 1, 1933), cert. den. en 289 U. S. 760; *Brampton Woolen Co.* v. *Field*, 56 F.2d 23 (C.C.A. 1, 1932), cert. den. en 287 U. S. 608; *Simmons* v. *Westover*, 76 F.Supp. 442, 172 F.2d 556 (C.C.A. 9, 1949); *Big Four Oil & Gas Co.* v. *Heiner*, 57 F.2d 29 (C.C.A. 3, 1932); *Greylock Mills* v. *Commissioner of Internal Revenue*, 31 F.2d 655 (C.C.A. 2, 1929), cert. den. en 280 U. S. 566, e innumerables casos resueltos por la Junta de Apelaciones Contributivas federal, especialmente el de *Nathan Loeser*, 27 B.T.A. 601 (transcurrieron seis años desde que se firmó la renuncia ilimitada hasta que se impuso la contribución) y otros en él citados.

De acuerdo con los hechos del presente caso que hemos expuesto anteriormente, aparece comprobado que la peticionaria solicitó varias suspensiones de la primera vista administrativa concedida; que luego de resuelta la primera reconsideración de las deficiencias, la peticionaria insistió solicitando una nueva reconsideración, habiendo accedido el Tesorero a conceder otra audiencia, la que en efecto se celebró el 20 de septiembre de 1944. Hasta ese momento difícilmente puede la peticionaria pretender que resolvamos que el tiempo transcurrido desde los meses de mayo y julio de 1941 en que firmó las renuncias ilimitadas no pueda considerarse como razonable.

■ Ahora bien, ¿puede considerarse como irrazonable el tiempo que tardó el Tesorero en dictar su segunda resolución en reconsideración el 6 de febrero de 1948? Resolvemos que no. La propia peticionaria, en la carta que dirigió al Tesorero en 27 de enero de 1947, urgiendo la resolución del caso, hizo constar que "Esta oficina comprende el trabajo que pesa sobre ese Negociado...", a lo que contestó el Tesorero informándole que el caso "aún está pendiente de cierta información solicitada a la oficina del Procurador General de Puerto Rico, a los fines de proceder a su resolución."

No se trataba de un caso corriente y sencillo sino de uno en que los ingresos brutos y las deducciones generales informados por la peticionaria para cada uno de los años contributivos sobrepasaban por mucho un millón de dólares. La actuación del Tesorero al conceder dos vistas administrativas en reconsideración y como resultado de ellas rebajar sustancialmente en dos ocasiones el importe de las deficiencias a ser pagadas por la peticionaria tampoco puede calificarse como perjudicial a la contribuyente, no importa el hecho de que para uno de los años envueltos, el 1935, la deficiencia fuera algo más alta debido a los intereses y penalidades.

■ Como se dijo en el caso de *Big Four Oil & Gas Co.* v. *Heiner,* supra: "El intervalo de tres años durante el cual la reclamación de crédito del apelante estaba siendo con-

siderada es largo, pero no irrazonable, cuando fué causado por el contribuyente, en vista de la cuantía de otras reclamaciones y planillas que requerían la atención del Comisionado." En dicho caso se aplicó, adoptándose, la regla establecida en el de *Greylock Mills* v. *Commissioner of Internal Revenue*, supra, al efecto de que "Si renuncias ilimitadas han de ser limitadas en cualquier caso, creemos que deben expirar solamente después que el contribuyente notifique al Comisionado que considerará que la renuncia ha terminado después de transcurrir un tiempo razonable, digamos tres o cuatro meses, desde la fecha de la notificación. En tal regla no hay perjuicio para ninguna de las partes; por el contrario, nos parece la más razonable."

¿Puede considerarse que la carta de la peticionaria al Tesorero, fechada el 27 de diciembre de 1945, llamándole la atención hacia el hecho de que en cuanto a las deficiencias para los años 1935, 1937 y 1938 el término que concede la sección 60 $(a)$ (1), supra, había vencido, tuvo el efecto de dar por terminada su renuncia ilimitada al término prescriptivo? Consideramos que no, ya que cuando ella hizo su renuncia en el año 1941 sabía que el término estatutario vencería y precisamente hizo una renuncia ilimitada de dicho término. De prevalecer la contención de la peticionaria ello equivaldría a sostener que no hizo ninguna renuncia a dicho término. Esto es insostenible.

Pasemos a considerar el último ataque de la peticionaria a su renuncia ilimitada de prescripción. Arguye que es nula porque no fué firmada por el Tesorero, dando a entender que por ese hecho no fué aprobada por dicho funcionario.

La jurisprudencia está dividida en cuanto a si una renuncia de prescripción que no ha sido aprobada por escrito por el Comisionado de Rentas Internas federal (aquí el Tesorero) es válida. 1951 *Fed. Tax Service, Prentice Hall*, vol. 2, sec. 19,391, pág. 19,343; 10 Mertens, ob. cit., sec. 57.69, pág. 246. Aun cuando la Corte de Apelaciones para el Pri--

mer Circuito se encuentre entre aquéllas que han negado eficacia a una renuncia no aprobada por escrito por el Comisionado—*United States* v. *Bertelsen & Petersen E. Co.*, 95 F.2d 867 (C.C.A. 1, 1938) ; *S. S. Pierce Co.* v. *United States*, 93 F.2d 599 (C.C.A. 1, 1937)—siendo la cuestión planteada una de interpretación de un estatuto local, no importa que éste sea similar al estatuto federal, no estamos obligados a seguir la interpretación que a este último haya dado dicha corte a pesar de que sus razonamientos puedan ser persuasivos. Véase *Pueblo* v. *Mantilla*, 71 D.P.R. 36, 51, escolio (11). Empero, en el presente caso no lo son pues se limitan a aplicar estrictamente las palabras del estatuto sin tomar en consideración, como lo han hecho otras cortes, las actuaciones de las partes y especialmente la del Comisionado, al dar consideración a la renuncia firmada por el contribuyente, tratar el caso como uno en el cual en efecto se ha renunciado al término prescriptivo y haberse pospuesto la imposición de la contribución por haber concedido el Comisionado (aquí el Tesorero) vistas y reconsideraciones a base de dicha renuncia. Por ejemplo, en el caso de *Shambaugh* v. *Scofield*, supra, la Corte de Apelaciones para el Quinto Circuito, después de hacer referencia a lo resuelto por la Corte Suprema nacional en el sentido de que una renuncia de esta naturaleza no es un contrato y que la disposición que requiere la aprobación del Comisionado se incluyó puramente para fines administrativos y no para convertir en un contrato lo que es esencialmente una renuncia voluntaria, unilateral, de una defensa del contribuyente—*Stange* v. *United States*, supra; *Florsheim Bros. Co.* v. *United States*, supra;—se expresó en esta forma, a la pág. 347 :

"Los contribuyentes intentaron, y todas las partes entendieron, que las renuncias fueron sometidas en ayuda y como parte de los esfuerzos de los contribuyentes para llegar a una transacción en el reajuste de la contribución, y que el propósito de las renuncias fué el suspender los efectos del estatuto mientras las ofertas eran consideradas. Ciertamente no se contempló que mientras los contribuyentes negociaban para mejorar su posi-

ción el término prescriptivo del estatuto continuara corriendo, de manera que aun cuando las ofertas de transacción fueran rechazadas el cobro de la contribución estaría impedido por prescripción."

Se resolvió en dicho caso que las cartas del Comisionado en que rechazó las ofertas de transacción que contenían las renuncias, "se referían a, y. deben considerarse en conexión con, las ofertas conteniendo las renuncias. Ellas constituyen prueba presuntiva de la conformidad del Comisionado con las renuncias, a menos que sean controvertidas por otra evidencia que aquí no se ha presentado. Si el Comisionado hubiera formalmente firmado las renuncias, los contribuyentes no hubieran ganado nada más. Habiendo tenido la ventaja completa de las renuncias, a los contribuyentes no debe permitírseles repudiarlas a menos que fueran claramente inoperables. ..." Al mismo efecto se ha pronunciado la Corte de Apelaciones para el Noveno Circuito en los casos de *Commissioner of Internal Revenue* v. *Hind*, 52 F.2d 1075 (1931) y *McCarthy Co.* v. *Commissioner of Internal Revenue*, 80 F. 2d 618 (1935), y es de notarse que la Corte Suprema, en este último caso, denegó certiorari en 298 U. S. 655, o sea con posterioridad a sus decisiones en los casos de *Stange* y *Florsheim*, supra. Mertens, ob. cit., pág. 248, dice que "Si bien la Corte Suprema no ha resuelto directamente sobre la validez de renuncias no firmadas [por el Comisionado], ha sostenido una renuncia firmada por el Comisionado mientras estaba pendiente una apelación ante la Junta de Apelaciones Contributivas", citando el caso de *Burnet* v. *Railway Equipment Co.*, 282 U. S. 295.

Por otra parte, en el de *Stearns Co.* v. *United States*, 291 U. S. 54, se resolvió que la falta de la firma del Comisionado puede ignorarse cuando existe el abandono de un privilegio al insistir en el cumplimiento de una condición y que cuando se hace una petición por el contribuyente, la cual contiene una renuncia, hasta que ésta sea revocada dentro de un tiempo razonable, tiene el efecto de un impedimento (*estoppel*) que

es, en último término, lo mismo que ya este Tribunal resolvió en el caso de *Sucrs. de J. González & Co.* v. *Buscaglia, Tes.*, supra, págs. 258-59, diciendo: "Si el término prescriptivo puede prorrogarse mediante pacto al efecto, de igual modo puede entenderse prorrogado cuando no existiendo tal pacto, la dilación es causada por la conducta del contribuyente antes descrita. ..."

Y la conducta de la contribuyente en el presente caso solicitando la reconsideración de las deficiencias y una vista administrativa y, luego de dictada una resolución, solicitando su reconsideración y una nueva vista, la cual le fué concedida, unida dicha conducta a la renuncia del término prescriptivo que firmó y juró ante un funcionario del Negociado de Contribución sobre Ingresos, hacía innecesaria, bajo las circunstancias concurrentes, la firma del Tesorero para que su conformidad a extender el término quedara plenamente demostrada a través de todo el procedimiento administrativo y para que la contribuyente esté impedida (*estopped*) de repudiar sus propias actuaciones y trate de acogerse a un privilegio que renunció.

## II

 En el segundo señalamiento sostiene la peticionaria que habiéndose declarado y reconocido voluntariamente por el Tesorero un reintegro a su favor para el año 1936, no podía negar su devolución amparándose en que el término de cuatro años para solicitarlo había expirado a la fecha de su reconocimiento, de acuerdo con la sección 64(*b*) de la Ley de Contribuciones sobre Ingresos.([1])

---

([1]) La sección 64(*b*) disponía:

"A excepción de lo que dispone la subdivisión (*c*) de esta sección (1) no se concederá ningún crédito o reintegro después de cuatro años *desde la fecha del pago de la contribución*, a menos que antes de vencidos esos cuatro años el contribuyente radique una reclamación, ni (2) deberá el montante del crédito o reintegro exceder de la ·parte de la contribución que fuere pagada durante los cuatro años inmediatamente precedentes a la reclamación, o si no se radicare una reclamación, entonces, dentro de los cuatros años inmediatamente precedentes a la concesión del crédito y reintegro." (Bastardillas nuestras.)

Arguye la peticionaria que la sección 64(b) debe aplicarse únicamente a aquellos casos en los cuales el contribuyente por error declaró un ingreso mayor del que legalmente debió hacer y en su consecuencia pagó una contribución en exceso, pero que no es aplicable a un caso como el presente en que fué el propio Tesorero quien determinó el exceso pagado por la contribuyente al revisar su planilla. Esta cuestión no fué planteada ante el Tribunal de Contribuciones pues tanto en su querella como en la vista celebrada la contribuyente se limitó a alegar y a sostener que "el término de cuatro años para su reclamación [del reintegro] empieza a contarse desde que el querellado notificó su resolución final de febrero 6, 1948, pero dicha reclamación de reintegro resultaría innecesaria y viciosa por haberse negado anticipadamente," y dicho tribunal correctamente resolvió que el punto de partida para contar los cuatro años es desde la fecha del pago de la contribución, según lo disponía expresamente la sección 64(b), supra. Véase González Padín Co. v. Tribl. de Contribuciones, 66 D.P.R. 964.

No habiéndose planteado ante el tribunal inferior la cuestión que ahora por primera vez se levanta, no debe ser considerada por nosotros. Monge v. Tribl. Contribuciones, 68 D.P.R. 639; Atiles, Admor. v. Com. Industrial, 69 D.P.R. 871.

### III

 Sostiene la peticionaria que si ella había perdido su derecho al reintegro reconocido por el Tesorero para el año 1936 por haber transcurrido los cuatro años, el Tribunal de Contribuciones erró al no aplicar la teoría de reconvención (recoupment) reconocida en el caso de González Padín Co. v. Tribl. de Contribuciones, supra, pues el reajuste que hizo el Tesorero y que ocasionó el pago en exceso en el año 1936 trajo como consecuencia la deficiencia del año 1935.

Explica su contención la peticionaria en esta forma:

"El Tesorero aumentó el valor del inventario de azúcar a junio 30 de 1935 en la suma de \$20,253.03, aumentando así el ingreso neto de dicho año e impuso una contribución mayor a la ya pagada. Como el inventario a fines de un año es el inventario a principios del siguiente, el Tesorero correctamente rebajó el ingreso neto de la contribuyente en el próximo año, o sea el 1936, por la misma cantidad de \$20,253.03, y determinó que se pagó contribución en exceso por dicho año 1936. Es decir que el Tesorero al hacer el ajuste reconoció y aceptó que la deficiencia en contribución del 1935 y el pago en exceso de contribución en el 1936 surgen de la misma transacción o evento, y al negarse a acreditar a la deficiencia del 1935, lo pagado en exceso por el 1936, el resultado es que está cobrando contribución dos veces sobre la misma transacción."

El Tribunal de Contribuciones resolvió que la doctrina de reconvención, al igual que no fué aplicada en el caso de *González Padín*, supra, no era aplicable al presente por los siguientes fundamentos:

"El único hecho envuelto, que produjo el resultado de un pago excesivo en 1936 y una deficiencia en 1935, fué el cambio en el valor de cada quintal de azúcar en los almacenes de la recurrente al terminarse, en junio 30 de 1935, un año económico de esta última. Es obvio que el Tesorero ha sido consecuente, sosteniendo siempre la misma actitud, e insistiendo, sin contradicción alguna, en su determinación original al efecto de que los 20,052.5 quintales de azúcar de que se trata tenían un valor de \$3.01 por quintal, en lugar de \$2, que fué el que a esa mercancía le asignó, oportunamente, la querellante.

"El hecho adicional de que el cambio requerido resultase en que se hubiera efectuado un pago excesivo por el año 1936 y en un aumento de la deficiencia contributiva por el de 1935 fué algo que el Tesorero no pudo remediar, de acuerdo con la ley, en esa ocasión.

"De los hechos envueltos no se puede inferir que el demandado cambió su tesis original cuando ya era tarde para que la contribuyente pudiese reclamar un reintegro, a menos que la inacción del Tesorero desde la fecha en que la demandante satisfizo voluntariamente su contribución hasta el día en que se le notificó a ésta una determinación tentativa de deficiencia, fuera calificable como una tramitación de 'una transacción o un evento

contributivo a base de determinada teoría'. *González Padín Co., Inc.* v. *Tribunal de Contribuciones,* supra. A semejante conclusión es imposible que lleguemos, desapasionadamente."

Consideramos que el Tribunal de Contribuciones cometió el error imputado. La doctrina de reconvención (*recoupment*) reconocida en el caso de *González Padín,* supra, no tiene el alcance limitado, bajo los hechos del presente, que le dió dicho tribunal. Si, como alega la peticionaria y admite el Tesorero, el aumento hecho por este último del inventario de azúcar de la peticionaria en junio 30 de 1935, que ocasionó una deficiencia para dicho año, es el mismo inventario usado por el Tesorero para el año 1936, el cual ocasionó una rebaja en el ingreso de la peticionaria para este último año, y por ende, el pago de una contribución en exceso, no hay duda de que, tanto la deficiencia en lo pagado para 1935 como el exceso de lo pagado para 1936, surgió de la misma transacción y que de no aplicarse la reconvención estaría el Tesorero dando inconsistente tramitación, en dos ocasiones distintas, a la misma transacción.

Dijimos en el caso de *González Padín,* pág. 969, citando lo resuelto en el de *Rothensies* v. *Electric Battery Co.,* 329 U. S. 296, que "Nunca se ha tenido en mente que esta doctrina permita que una transacción se compense con otra, sino permitir únicamente que se examine en todos sus aspectos una transacción que es objeto del pleito de un demandante, y que se dicte sentencia y se imparta justicia con vista de la transacción en su totalidad." Y también advertimos en el escolio (1), pág. 970, que la reconvención "...está fundada en la teoría equitativa de que todas las contribuciones y los créditos que surgen *de la misma transacción—ya se paguen o se obtengan las contribuciones o créditos en los mismos o en diferentes años—*deben reajustarse sin referirse al término prescriptivo con el fin de evitar el enriquecimiento injusto de una parte que intenta tramitar inconsistentemente la misma partida en épocas diferentes." (Bastardillas nuestras.)

La situación en el presente caso se asemeja a la del de *Crossett Lumber Co.* v. *United States,* 87 F.2d 930 (C.C.A. 8, 1937), en el cual debido a un error incurrido por el Comisionado en cuanto al inventario de la contribuyente para el año 1926, se disminuyó el ingreso tributable para dicho año pero se, aumentó para el año 1927, y como resultado el Comisionado acreditó cierta suma a una deficiencia de la contribuyente para el año 1924. La contribuyente solicitó el reintegro de lo pagado en exceso en el año 1927 y el gobierno, alegando que el crédito que hizo para el año 1924 no procedía debido al error incurrido en el inventario, solicitó se aplicara o bien la doctrina de *estoppel* o la de reconvención (*recoupment*). La corte resolvió que la primera no procedía pero sí la segunda, diciendo a la pág. 933:

"En este caso una actuación, la errónea valuación del inventario de noviembre 30, 1926, puso en movimiento una serie de hechos que culminaron en el erróneo reintegro a la contribuyente de una parte y una tasación excesiva en su favor de la otra. Si el Gobierno, dentro del término prescriptivo, hubiera traído una acción para recobrar el reintegro, erróneo por el inventario, la contribuyente hubiera podido levantar como defensa su pago en exceso de la contribución sobre ingresos del año siguiente, inducida por el mismo inventario erróneo. Hay una conexión tan directa en este caso entre las contribuciones sobre ingresos *pagadas en años sucesivos* basadas en un solo inventario erróneo como la había entre la contribución de herencia erróneamente determinada y contribución sobre ingresos correctamente determinada sobre la misma partida en *Bull* v. *United States,* supra. Siendo ésa la situación, es inmaterial que las partes estén a la inversa y que sea la contribuyente quien haya demandado...." (Bastardillas nuestras.)

Lo dicho en el caso de *Bull* v. *United States,* 295 U. S. 247, 262, al efecto de que "Si la reclamación por la deficiencia de contribución sobre ingresos hubiera sido objeto de un pleito, cualquier contrarreclamación como reconvención (*recoupment*) del pago en exceso de la contribución de herencia hubiera podido alegarse por vía de defensa y haberse obtenido

un crédito, no obstante que el término prescriptivo hubiera impedido su reclamación en contra del Gobierno", lo comenta McConnell, *The Doctrine of Recoupment in Federal Taxation*, 28 Va. L. Rev. 577, 587, diciendo: "Siendo esto así, el contribuyente, aunque nominalmente el demandante, fué tratado como si fuera el demandado en una acción por los Estados Unidos para cobrar contribuciones."

En la misma forma, aquí la contribuyente, aunque demandante, puede levantar la defensa de reconvención en contra del Tesorero. La actuación de éste variando el monto del inventario de azúcar para 1935, aunque no fuera errónea, tuvo el efecto de producir una deficiencia en la contribución pagada por la contribuyente para dicho año y al mismo tiempo un pago en exceso por ella en cuanto a la contribución de 1936, hecho éste admitido por el propio Tesorero. A los efectos de la aplicación de la doctrina de reconvención, fué la misma transacción. La peticionaria tiene derecho, no a una sentencia a su favor por lo que pagó en exceso en 1936, ya que, como se ha dicho gráficamente en cuanto a la doctrina de reconvención, ésta constituye un escudo pero no una espada, sino a que, tratándose de una sola transacción que ocasionó la deficiencia de 1935, se le proteja en cuanto al pago de ésta en el monto del exceso de 1936. Aunque en el caso de *González Padín*, supra, llegamos a una conclusión distinta ello se debió al hecho de que allí la reclamación del contribuyente no surgió de la misma transacción.

## IV

Por último, alega la peticionaria que el Tribunal de Contribuciones erró al declarar sin lugar la deducción reclamada para el año 1939 con respecto a una partida de $11,390.46 que fué agregada por el Tesorero a los ingresos de la peticionaria para dicho año.

De acuerdo con la prueba presentada, surge que en junio 30 de 1938 la peticionaria tenía en existencia 58,995 sacos

de azúcar excedente que fué valorado en el mercado a esa fecha en $6.991856 el saco. Para la misma fecha se creó por la peticionaria una reserva de $44,590.92 para cubrir los gastos de venta y embarque del referido azúcar. La reserva se calculó en $0.755842 de gastos de venta y embarque por cada saco de azúcar. En junio 30 de 1939 la contribuyente vendió 8,536 de los 58,995 sacos de azúcar, quedándole en existencia 50,459 sacos de azúcar excedentes. El precio en el mercado del azúcar para esta fecha fué de $6.75. Entonces la peticionaria, en vez de seguir con el sistema de reserva que había establecido, eliminó la reserva en junio 30 de 1939 y valoró en $6.75 el saco de azúcar menos 75¢ para gastos de venta y embarque, o sea, valoró el precio neto a $6. Esto dió un valor para dichos 50,459 sacos de $302,754. Como esos 50,459 sacos habían sido valorados en junio 30 de 1938 a razón de $6.99 ($6.991856), o sea un total de $352,802.07, la contribuyente consideró que había tenido una pérdida en la diferencia, o sea $50,048.07. Entonces informó como ingreso para el año 1939 la cantidad de $38,657.61, o sea el remanente sin utilizar de la reserva de $44,590.92 de junio 30 de 1938 e incluyó como pérdida la cantidad de $50,048.07 a la cual hemos hecho referencia. El Tesorero no aceptó como ingreso los $38,657.61 ni aceptó como pérdida los $50,048.07 y como resultado, el ingreso de la peticionaria fué aumentado en la diferencia, o sea en $11,390.46.

Al resolver la cuestión planteada por la contribuyente y rechazar su contención de que había sufrido la pérdida aludida, el Tribunal de Contribuciones se basó exclusivamente en el hecho de que la peticionaria no probó que los 75¢ estimados por ella como el costo de embarque y mercadeo fuera una realidad. Al efecto se expresó en esta forma:

"Nos resistimos a creer que para la fecha de la vista de este caso, aproximadamente diez años después, la demandante no tuviera ya prueba de la cantidad exacta que gastó en la venta y embarque de estos azúcares que nos hubiera permitido determinar si en realidad el llamado valor neto de dicho azúcar al 30

de junio de 1939 fué el de. $6 o el de una cantidad mayor o menor. Esta prueba, sin embargo, no fué traída por la demandante, y, como ya hemos dicho, este tribunal no está inclinado a resolver contiendas contributivas basándose en doctrinas, inferencias o sistemas de contabilidad si no hay prueba sobre hechos reales que las sostengan."

Del examen que hemos hecho de la prueba presentada estamos convencidos de que el error imputado no fué cometido.

*Con la modificación correspondiente en relación con la deficiencia del año 1935 y el pago en exceso para el año 1936, debe confirmarse la sentencia.*