EDGAR S. BELAVAL, demandante y recurrente, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número*: 12588. *Resuelto*: 28 de julio de 1961.

*Elí Beléndez García,* abogado del recurrente; *J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario*

*Auxiliar* y *Luis F. Candal, Procurador Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El Reglamento de la Universidad de Puerto Rico[1] vigente en 1952, año contributivo a que se refiere la controversia envuelta en este pleito, dispone que "se extenderán nombramientos permanentes a las personas que, desempeñando tarea completa ('full time'), ocupen plazas fijas en el presupuesto, y a juicio de las autoridades académicas correspondientes, hayan prestado los años de servicio satisfactorios" exigidos por la sección 16 de la Ley núm. 135 de 7 de mayo de 1942.[2] Una vez adquirida la permanencia un profesor no puede ser separado de servicio a menos que se le formulen cargos y se le dé la oportunidad de defenderse, *Rivera* v. *Benítez, Rector,* 73 D.P.R. 377 (1952), pero en el orden profesional, no se le exigen inexorablemente requisitos adicionales para conservar tal status, tales como cursar estudios conducentes al logro de grados académicos superiores. La preparación académica adicional se refleja en el sueldo a percibirse, pues además del sueldo básico mensual, se provee para compensación adicional por preparación académica.[3]

---

[1] El reglamento a que nos referimos fue aprobado por el Consejo Superior de Enseñanza en 23 de junio de 1950, a tenor con las disposiciones de las secciones 11 y 14 de la Ley núm. 135 de 7 de mayo de 1942 (Leyes, pág. 763, 18 L.P.R.A. secs. 642 y 645).

[2] Dicha sección 16 (18 L.P.R.A. sec. 647) dispone que los nombramientos tendrán carácter permanente una vez transcurran cinco años de servicios ordinarios satisfactorios y se extienda nombramiento para un sexto año. Véase, *Núñez* v. *Benítez, Rector,* 65 D.P.R. 864 (1946).

[3] El artículo 1 del capítulo IV de dicho Reglamento dispone que:

"Artículo 1.—Los sueldos de los instructores, catedráticos auxiliares, catedráticos asociados y catedráticos se calcularán a base de un sueldo básico mensual de $225, $265, $305 y $355 respectivamente, más com-

En la sesión universitaria de 1951–52, la esposa del recurrente Edgar S. Belaval prestó servicios como profesora a la Universidad de Puerto Rico con el rango de catedrática auxiliar permanente, y percibía un sueldo básico de $3,780 anuales más una compensación adicional de $240, o sea un total de $4,020. Durante el siguiente año trabajó bajo idénticas condiciones, excepto que recibió un aumento anual de $60 en su sueldo para conformarlo con la retribución especificada en la escala de sueldos fijados en el Reglamento de la Universidad para catedráticos auxiliares con "preparación equivalente al Master y servicios de 15 o más años". Para el año 1954–55 se le aumentó la retribución anual a $4,800 en consideración al desempeño de sus labores en forma excepcional y por servicios adicionales a sus deberes puramente docentes. Esta escala de sueldos ha sido periódicamente aumentada por el Consejo Superior de Enseñanza para ajustarla a las realidades del poder adquisitivo del dinero.

En el verano del año 1952 la señora Belaval disfrutó de una licencia extraordinaria con sueldo([4]) (9 de junio a 24 de julio) y licencia ordinaria (25 de julio a 17 de agosto). Se le autorizó a cursar estudios en la institución Kenyon

---

pensaciones adicionales que se computarán de acuerdo con la siguiente escala:

 a) Por preparación académica:

 $30 mensuales por uno o más años de estudios universitarios y postgraduados por los cuales la Universidad reconocida haya otorgado un grado igual o equivalente al grado de MASTER que otorgan las mejores Universidades.

 $75 mensuales por estudios universitarios superiores al grado de MASTER y por los cuales una Universidad reconocida haya otorgado un grado igual o equivalente al DOCTORADO que otorgan las mejores Universidades.

 b) Por años de servicio a la Universidad de Puerto Rico:

 $15 mensuales por 5 años o más años.

 $30 mensuales por 10 o más años, y

 $45 mensuales por 15 o más años."

 ([4]) El Capítulo VI del Reglamento provee para la concesión por la Junta Universitaria de varias clases de licencias: sabáticas, extraordinarias, sin sueldo, por enfermedad, de maternidad y ordinarias. La sección 3, que se refiere a las licencias extraordinarias, dispone que "[S]e

School of Letters, sita en el estado de Indiana. Según se estipuló por las partes, "estos estudios no se hicieron ni a requerimiento, ni porque la obligó la Universidad de Puerto Rico y los mismos no conllevaban un aumento de sueldo, sino que fueron hechos por conveniencia de la señora Belaval y últimamente redundaría en beneficio de la Universidad de Puerto Rico como resultado de la mejor preparación académica de dicha profesora", y "[*T*]*ampoco se le requerían para que pudiera seguir desempeñando su cargo.*" Durante su estada en dicha institución la señora Belaval tomó dos cursos que se le acreditaban a los fines de obtener un doctorado.

El contribuyente dedujo en su declaración de ingresos del año 1952 la suma de $530.20, importe de los gastos en que incurrió su esposa para realizar los estudios mencionados.(5) La cuestión principal que debemos resolver es si dichos gastos constituyen "gastos ordinarios y necesarios" "deducibles bajo las disposiciones de la sección 16 (a) (1) de la Ley de Contribuciones sobre Ingresos de 1924 (13 L.P. R.A. sec. 695 (a) (1) ).

De un estudio de la jurisprudencia de cortes americanas sobre situaciones similares, e interpretando una disposición legal idéntica, puede afirmarse en términos generales que los gastos en que incurre un maestro para obtener una mayor preparación o un rango académico superior se consideran como gastos personales, y por tanto, no deducibles como ordinarios y necesarios. Sin embargo, cuando esta mayor preparación o el rango académico superior se requieren para que

podrá conceder, bajo circunstancias excepcionales, licencia con sueldo, o con ayuda económica, a miembros del Servicio Exento para realizar trabajos especiales o *para cursar estudios* en o fuera de la Isla." La sección 7 dispone que los miembros del personal universitario tendrán derecho a licencias ordinarias a razón de 2 ½ días por cada mes de servicio.

(5) Los gastos cubren transportación, matrícula, libros, servicios mecanográficos y hospedaje. No hay controversia alguna sobre su comprobación o razonabilidad.

el maestro conserve su cargo o posición profesional, los gastos en que para ello se incurra en estudios superiores se considerarán como gastos ordinarios y necesarios. Según se expresó en *Hill* v. *Commissioner of Internal Revenue*, 181 F.2d 906 (C.A. 4, 1950), son deducibles los gastos cuando se incurren para mantener una posición, no para obtener un nuevo cargo; para conservar el cargo, y no para lograr un aumento de sueldo; para continuar en una posición, no para comenzar en un puesto. En dicho caso se sostuvo que los gastos eran deducibles ya que respondieron a la necesidad de conservar el cargo que desempeñaba la contribuyente como maestra de instrucción pública, debido a que la ley del estado le requería que, para obtener la renovación de su certificado como maestra, cursara determinados estudios durante el verano, o en su defecto, se sometiera a un examen. A la misma solución se llegó en *Robert S. Green*, 28 T.C. 1154 (1957) en donde se trataba del cumplimiento de cierto requisito de aprobar tres créditos cada cinco años para obtener aumentos anuales dispuestos en una escala de salarios, o conservar la posición lograda, aun cuando el contribuyente había ya obtenido el mayor salario posible y los estudios cursados podían incidentalmente acreditarse a los fines de obtener un doctorado. Se indicó que bajo las circunstancias concurrentes, los estudios eran indispensables para que el contribuyente *conservara* su posición como profesor. En *Marlor* v. *Commissioner*, 251 F.2d 615 (1958), revocando la Corte de Contribuciones (27 T.C. 624 (1956)), se sostuvo que eran deducibles los gastos incurridos en estudios para conservar una posición temporera como maestro. Véase, sin embargo, para una interpretación restrictiva, *Richard Siebold*, 31 T.C. 1017 (1959). Cuando los gastos se incurren para cumplir con una condición a los fines de lograr una posición como profesor o para *completar la educación,* no son deducibles por tratarse de una inversión de capital. Así, en *Robert M. Kamins*, 25 T.C. 1238 (1956),

se rechazó la deducibilidad de gastos de viaje y para mecanografiar una tesis conducente al grado de doctor que se incurriera por el contribuyente para calificar a los fines de *obtener* una posición para la cual se requería completar sustancialmente los estudios del grado de doctor. Véase, *Matilda M. Brooks*, 30 T.C. 1087 (1958).

En resumen, los gastos en que se incurra para cursar estudios superiores o adicionales son deducibles cuando se requieren para poder conservar el cargo o la posición como maestro. *Noland* v. *Commissioner*, 269 F.2d 108, 111 (C.A. 4, 1959) ; Mertens, *Law of Federal Income Taxation*, vol. 4, sec. 25.122, págs. 358–360; Johnson, *Deducting Summer School Expense*, 29 Taxes, pág. 749. No son deducibles, sin embargo, cuando se incurre en los gastos para lograr el puesto, obtener un rango académico superior o una mayor compensación dentro de una escala de sueldos, o para lograr aspiraciones personales de mejoramiento cultural del maestro.

 Ahora bien, estas interpretaciones de la jurisprudencia americana sólo tienen fuerza persuasiva para este Tribunal. *Cía Azucarera* v. *Tribunal de Contribuciones*, 72 D.P.R. 909, 921, (1951) ; *Corretjer* v. *Tribunal*, 72 D.P.R. 754 (1951) ; *Castro* v. *González*, 70 D.P.R. 887 (1950). Ello quiere decir que estamos en libertad de adoptar una regla que responda a la situación y a las necesidades de nuestro medio. En ese sentido, creemos que el adelantamiento cultural que logran los maestros representa un beneficio de incalculable valor para nuestra juventud, y que ninguna medida es suficiente para estimular este crecimiento intelectual. Colocada en la balanza de las conveniencias sociales y económicas es preferible que el fisco reciba unos ingresos menores si el precio que pagaremos es permitir la deducibilidad de los gastos—como gastos ordinarios y necesarios— en que incurra un maestro ávido de mejoramiento profesional. Estos gastos se han hecho prácticamente indispensables en nuestro mundo profesional que se caracteriza princi-

palmente por la especialización, y responden además a la necesidad de conocer los adelantos tecnológicos en las artes y las ciencias. Precisamente el estado de la instrucción pública ha sido y es un problema de honda preocupación para los dirigentes de nuestro pueblo, y es unánime el criterio de que debemos mejorar la calidad de la educación.(6) Cualquier estímulo al maestro, por pequeño que sea, contribuye en último análisis a formar mejores ciudadanos. Establecemos, por tanto, que consideramos gastos legítimos aquellos que efectúa un maestro para mantener y mejorar la destreza o habilidad (skill) requerida en su ministerio. Claro está, que para ello debe demostrarse que los estudios cursados son aquellos que usual y corrientemente se acostumbran entre los miembros de dicha clase profesional, y que *no responden únicamente* al propósito de obtener una posición mejor remunerada o a la aspiración personal de mejoramiento cultural del maestro. Debe haber una relación entre los estudios cursados y el rendimiento profesional del maestro que se traduzca en un beneficio efectivo para la población escolar. En otras palabras, rechazamos como único criterio de deducibilidad de estos gastos el de que se incurra en los mismos para conservar un puesto o cargo, y lo extendemos a otros casos según hemos expuesto. Por supuesto que cada caso deberá ser examinado para comprobar los extremos apuntados, y además, para determinar la razonabilidad de los gastos en que se haya incurrido.(7)

La posición que adoptamos encuentra apoyo en la sección 1.162–5 del Reglamento Federal (Federal Tax Regulations,

---

(6) Mensaje sobre Educación del Gobernador de Puerto Rico a la Asamblea Legislativa, 3 de mayo de 1960 (Imprenta del Gobierno, 12 págs.). Informes de la Comisión de Instrucción de la Cámara de Representantes sobre el Estado del Sistema Educativo en Puerto Rico de las siguientes fechas: 18 de abril de 1960, 21 de diciembre de 1960 y 30 de diciembre de 1960.

(7) A este respecto es bueno apuntar que, en la determinación final de la cantidad a concederse como deducción deben estimarse los gastos en que hubiese incurrido el contribuyente en caso de no cursar los estudios y reducir su importe total de gastos.

1961, pág. 222) adoptada en 8 de septiembre de 1958. Tal vez sería conveniente que, a los fines de mayor claridad, se enmendara el artículo 23(a)-5 de nuestro Reglamento (13 R. & R.P.R. sec. 3023(a)-5,[8] para ajustarlo a la presente interpretación sobre el carácter deducible de gastos educativos. Cf. *John S. Watson*, 31 T.C. 1014 (1959); *Coughlin v. Commissioner*, 203 F.2d 307 (C.A. 2, 1953). Véanse, *New Treasury Regulations Defines Deductibility of Education Costs as Trade or Business Expense*, 58 Colum. L. Rev. 1097 (1958); *Deductibility of Educational Expenses*, 6 Stan. L. Rev. 547 (1954); 52 Mich. L. Rev. 459 (1954); 7 Vand. L. Rev. 134 (1953).

De los hechos estipulados por las partes aparece que los estudios efectuados por la señora Belaval "redundarían en beneficio de la Universidad de Puerto Rico como resultado de la mejor preparación académica" por ella adquirida; que fue autorizada con licencia extraordinaria a efectuar los estudios; y que no fueron cursados con el propósito de obtener un aumento en sueldo, sino para mantener su destreza profesional y aumentar su habilidad en la enseñanza de las materias a su cargo. Bajo estas circunstancias los gastos por ella incurridos son deducibles como gastos necesarios y ordinarios de su profesión.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 20 de junio de 1958.*

---

[8] El artículo mencionado de nuestro Reglamento es una traducción de la sección 39.23(a)-5 del Reglamento Federal de 1954 (Federal Tax Regulations, 1954, pág. 104).