[Crim. No. 226.   Department Two.—July 20, 1897.]

# THE PEOPLE, RESPONDENT, *v.* THOMAS GRIFFIN, APPELLANT.

CRIMINAL LAW—RAPE—FEMALE OF UNSOUND MIND—RESISTANCE OR CON-·SENT IMMATERIAL.—Under the second subdivision of section 261 of the Penal Code, the act of sexual intercourse with a female not the wife of the perpetrator, where she is incapable, through lunacy, or any other unsoundness of mind, whether temporary or permanent, of giving legal consent, constitutes the crime of rape; and in this species of rape, neither force upon the part of the man, nor resistance upon the part of the woman forms an element of the crime, nor will apparent consent avail any more than in case of a child incapable by law of giving legal consent

ID. —LEGAL CONSENT—IMPAIRED INTELLECT — CAPACITY ORDINARILY QUESTION FOR JURY.—Legal consent presupposes an intelligence capable of understanding the act, its nature, and probable consequence and this degree of intelligence may or may not exist with an and weakened intellect; and whether a woman of impaired intellect sessed mental capacity sufficient to give legal consent, must in exceptional cases, remain a question of fact for the jury.

ID.—DEFENDANT'S KNOWLEDGE OF MENTAL UNSOUNDNESS IMMATERIAL—ILLEGAL MOTIVE—CRIMINAL INTENT.—Where the find with whom the act of sexual intercourse was perpetrated in fact, so mentally unsound as to be incapable of giving legal consent, the person committing such act does so at his peril, and an illegal motive being present, that illegal motive becomes a criminal intent from the facts, at peril of which he acts, are shown to exist, and it e for the crime that the defendant did not know, or have reason to ve, the incapacity for legal consent.

ID.—INTERCOURSE WITH FEEBLE-MINDED GIRL—SUFFICIENCY OF EVIDENCE. Where the evidence shows that the act of sexual intercourse complained of was with a feeble-minded girl of ateen years of age, and that she was feeble-minded from early and was an inmate of the state home for the feeble-mind at the time of trial, and was then feeble-minded, the evidence is sufficient to warrant the finding of the jury that the girl, by reason of mental unsoundness, was incapable of giving legal consent at the time of the complained of.

ID.— MENTAL INFIRMITY OF LONG STANDING — EVIDENCE—CONDITION AT TIME OF TRIAL—HOME FOR FEEBLE-MINDED. —Where the mental infirmity of the female sought to be shown by the people was one of long standing, evidence of its past, present, and continued existence is admissible as bearing upon her state of mind at the time of the occurrence of the act complained of, and where she was shown to have been feeble-minded from infancy, testimony of the medical superintendent of the state home for the feeble-minded that she was at the time of trial, six months after the alleged an inmate of that institution, and was then feeble-minded, sible, as throwing light upon her condition at the time of the c

Appeal from a judgment of the Superior Court of Contra Costa County and from an order denying a new trial. Jos. P. Jones, Judge.

The facts are stated in the opinion of the court.

*W. F. Tinning,* for Appellant.

*W. F. Fitzgerald,* Attorney General, and *Charles H. Jackson,* Deputy Attorney General, for Respondent.

Henshaw, J.—The defendant, charged with the crime of rape, was convicted of an attempt to commit rape. From the judgment and from the order denying him a new trial, he prosecutes these appeals.

By the evidence of the people it appeared that the victim was a feeble-minded girl about eighteen years of age. She and her brother were alone upon their ranch when defendant, and a companion by the name of Love, drove up. To accomplish their design they inveigled the brother away from his home. He, returning, heard his sister crying, and entering her bedroom, discovered defendant *in flagrante delicto.*

At common law, where the elements of force upon the part of the assailant, and resistance upon the part of the woman, were always regarded as essentials to the crime, much difficulty was experienced by the judges in bringing many cases, calling aloud for punishment, within the strict definition of the offense. The result, as may be conceived, was that the courts between their natural desires, upon the one hand, to punish the wicked, upon the other to maintain the integrity of the law, were driven to extreme niceties of distinction. The books are thus full of cases which are to-day of more interest for the acumen displayed, than for any light which they shed upon the matter.

For, in this state, all these questions have been solved and finally disposed of by the express language of our statute. This, while still entitling the crime rape, embraces in its subdivisions some offenses not cognizable

as such at common law, and others which only after much stress and perturbation upon the part of the judges were finally determined to come within the purview of that crime.

Of these offenses, grouped by our statute under the name of rape, the one with which we are here particularly concerned is that designated in subdivision 2 of section 261 of the Penal Code:

"Sec. 261. Rape is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, under either of the following circumstances: . . . . 2. Where she is incapable, through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent."

In this species of rape neither force upon the part of the man, nor resistance upon the part of the woman, forms an element of the crime. If, by reason of any mental weakness, she is incapable of legally consenting, resistance is not expected any more than it is in the case of one who has been drugged to unconsciousness, or robbed of judgment by intoxicants. Nor will an apparent consent in such a case avail any more than in the case of a child who may actually consent, but who, by law, is conclusively held incapable of legal consent.

Whether the woman possessed mental capacity sufficient to give legal consent must, saving in exceptional cases, remain a question of fact for the jury. It need but be said that legal consent presupposes an intelligence capable of understanding the act, its nature, and possible consequences. This degree of intelligence may exist with an impaired and weakened intellect, or it may not.

Defendant proposed the following instruction, which was given by the court with the elimination of the words embraced in parentheses: "Mere weakness of mind on the part of a woman does not disbar or disable her from consenting to an act of sexual intercourse, and one of less degree of intelligence or capacity than is necessary to make a contract may consent to carnal connection so

that the act will not amount to rape in the man; but if a woman is, through lunacy or other unsoundness of mind, whether temporary or permanent (so idiotic) as to be (absolutely) incapable of giving legal consent, the connection with her is rape (if the man be, at the time of the connection, aware of her mental condition)."

Defendant's special complaint is over the elimination of the condition "if the man be at the time aware of her mental condition." It is here insisted that defendant's evidence disclosed that he had no knowledge of her mental incapacity, and such indeed is his evidence. It is further contended that in the absence of such knowledge, or of reasonable means for acquiring such knowledge, he may not be convicted.

But with this we cannot agree. It is well and justly settled that one who has intercourse with a child under fourteen years of age is guilty of rape, even if she actually consents; and if the defendant *bona fide* believes, and has good grounds for belief, that she is past the age which establishes the crime. (*People* v. *Ratz*, 115 Cal. 132.) The same principle is uniformly applied in cases of abduction and of placing minors in houses of prostitution, where the fact, and not defendant's knowledge or belief, fixes his responsibility. Not only does the due protection of society demand this, but he who engages in such enterprises is committing a moral wrong, for which there can be neither palliation nor excuse. The illegal motive is present, and that illegal motive becomes a criminal intent when the facts, at whose peril he acts, are shown to exist. The same principle is strictly applicable to the case at bar. Indeed, it may be said that there is even more reason for its invocation and use. It may happen that a female child under the age of fourteen may early mature and present the appearance of one much more advanced in years. But in such a case her undoer is not exculpated. It can scarcely happen that one seeking illicit intercourse with a woman of weakened intellect will not know that fact. If he indulges in niceties as to whether or not she be just so far

mentally infirm as to save him from criminal conse-
quences, and so pursues his purpose, he does so at his
peril.

The evidence of the people was sufficient to warrant
the finding of the jury that the girl, by reason of men-
tal unsoundness, was incapable of giving legal consent.
It was shown that she had been feeble-minded since
early childhood. The medical superintendent for the
state home for feeble-minded testified that she was
(at the time of the trial) an inmate of his institution
and was feeble-minded. Objection was made to this
evidence as bearing upon her condition six months
after the alleged offense, and as not throwing light upon
her condition at the time of the offense. A similar point
is made upon the court's refusal to give an instruction
embodying this objection. But, as the mental infirm-
ity sought to be shown by the people was a long-stand-
ing one, evidence of its past, present, and continued
existence was admissible as bearing upon her state of
mind at the time of the occurrence.

The judgment and order appealed from are affirmed.

McFARLAND, J., and TEMPLE, J., concurred.

Hearing in Bank denied.