PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* CARLOS RIVERA, Defendant and Appellant.

No. 3263. Argued November 15, 1927.—Decided April 28, 1928.

*R. Martínez Nadal* and *Arcilio Alvarado* for the appellant.  *José E. Figueras* for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

On information for rape the defendant was found guilty. As appellant he concedes that under the jurisprudence of California a man who has carnal intercourse with a woman who is incapable of giving her consent to the act is guilty of rape.  From the evidence in this case there is no doubt that the jury had a right to believe that the female in question was insane to such a point as to be unable to consent to the act of intercourse.  The appellant asks this court not to follow the jurisprudence of California but to determine the law for itself.  He insists that the law should be that a man should not be found guilty of rape where the woman apparently consents and defendant had no reason to believe that she was insane.  The particular error assigned goes to the instructions of the court in a contrary sense.

The idea as presented in the brief and at the hearing was that modern science had recognized various kinds of insanity, and that a woman could be insane and still appear to be the contrary.  In the course of his brief the appellant maintains that in such a case there could be no criminal act because there was no criminal intent.  We find no reason to discuss the matter of criminal intent because the case must be decided on other grounds.

Our decision is based on the words of the statute itself.

"Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under any of the following circumstances:

"1.—Where the female is under the age of fourteen years;

"2.—Where she is incapable, through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent;

"3.—Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of ex-

ecution, or by any intoxicating narcotic, or anaesthetic substance, administered by or with the privity of the accused;

"4.—Where she resists, but her resistance is overcome by force or violence;

"5.—Where she is at the time unconscious of the nature of the act, and this is known to the accused;

"6.—Where she submits under the belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with the intent to induce such belief." Section 255 of the Penal Code, page 912 of the Revised Statutes.

California has a similar statute, and in *People* v. *Griffin*, 117 Cal. 583, the court said:

"Where the female with whom the act of sexual intercourse was perpetrated was, in fact, so mentally unsound as to be incapable of giving legal consent, the person committing such act does so at his peril, and an illegal motive being present, that illegal motive becomes a criminal intent, when the facts at peril of which he acts, are shown to exist, and it is no excuse for the crime that the defendant did not know, or have reason to believe, the incapacity, for legal consent."

The decision of the court, however, follows the statute, which makes it specifically a crime for a man to have intercourse with an insane woman. The feature of knowledge that the woman is insane plays no role. The Legislature, as in other statutory crimes, milk cases, for example, has left the question of knowledge aside.

Minnesota has a similar statute. In *State* v. *Dombroski*, 176 N. W. 985, the court takes the same position as the California court. After setting out that the Legislature had purposely omitted the element of knowledge, it said:

" . . . . . The result stated seems clear, and it accords with the rule of construction followed in other statutory crimes. It is consistent and in harmony with the rule applied in prosecutions involving the age of the complainant, under which practically all the courts hold that the honest belief of the accused that she had reached the age of consent when in fact she had not constitutes no defense. (Citations) It also harmonizes with the authorities

holding to the rule that, in the absence of statute otherwise providing, sale of liquor to prohibited persons—minors, habitual drunkards and intemperate persons—constitutes a violation of the law without regard to the personal knowledge of the person making the sale as to their age or habits. In such cases the seller is bound to know at his peril whether a sale may lawfully be made to the particular person. (Citing cases) Whether the difference in the views of the courts is founded upon statutory provisions or in respect to the application and scope of the rules of the common law, we do not stop to inquire. Our decision is predicated upon the statutes of this state, which in our judgment clearly eliminate the element of knowledge and intent as to the particular crime. We therefore sustain the instructions of the trial court.''

In Missouri where there is apparently no statute like our own the courts are in full harmony with the position of appellant. *State* v. *Warren,* 232 Mo. 185, 134 S. W. 522, Ann. Cas. 1912-B 1042; *State* v. *Schlichter,* 173 S. W. 1072, 263 Mo. 561.

That there were other courts who would probably decide the same way as Missouri may be gathered from a note in Annotated Cases, *supra,* following the case of *State* v. *Warren.* This disposes of the first assignment of error.

The appellant is entirely right in maintaining that the insanity must be of a kind that will prevent a woman from giving a legal consent. In .this case from the testimony of Dr. Goenaga and others the prosecutrix was incapable of consenting in the legal sense. The third assignment of error was that the verdict was contrary to the evidence, but we find it sufficient.

The second assignment of error relates to the action of the court in refusing to admit a letter written by the prosecutrix. The refusal to admit was because the handwriting of the prosecutrix had not been sufficiently identified. One witness, the wife of the defendant, attempted to identify the handwriting, but at no time did she say anything that laid a proper foundation for the introduction of the letter. There was another witness who said that he knew the handwriting

of the prosecutrix; that he had seen her write three or four years before when she was his classmate. In other words, he admitted that his knowledge was based on the experience of a good many years before. However, he also said that Epigménea Pagán (the prosecutrix) was always writing songs and that he had seen her at work and seen some of her writing when he visited the house of the defendant, whose friend he was. The court did not find the foundation sufficient for admitting the letter, probably partially because it did not believe that the witness Rivera really knew the handwriting of the prosecutrix.

We shall not definitely attempt to decide in a case where the matter has been so little discussed whether a court has a right to refuse to admit in evidence a letter because he does not believe the statements of the witness attempting to identify the handwriting. We shall not do this for several reasons. In the first place, we agree with the *Fiscal* that an isolated letter showing signs of intelligence would not have tended to show that the prosecutrix was sufficiently intelligent to have given her consent in this case. We are inclined to agree that the evidence was immaterial, but that in any event the refusal to admit the letter was a harmless error. Furthermore, we do not find that the letter was copied into the record, nor are its contents in any way shown to us.

In general, where a party wishes us to review the failure of the court below to admit a certain piece of documentary evidence, the contents of the document ought in some way be placed before us so that we may judge of its importance or materiality. We are inclined to think that there was no error and we find no prejudice.

The judgment appealed from will be affirmed.

Mr. Justice Texidor took no part in the decision of this case.