[Crim. No. 7386.   In Bank.   July 9, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. FRANCISCO ANGEL HERNANDEZ, Defendant and Appellant.

Ellery E. Cuff, Public Defender, Fred Kilbride and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

PEEK, J.—By information defendant was charged with statutory rape. (Pen. Code, § 261, subd. 1.) Following his plea of not guilty he was convicted as charged by the court sitting without a jury and the offense determined to be a misdemeanor.

Section 261 of the Penal Code provides in part as follows: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances: 1. Where the female is under the age of eighteen years; . . ."

The sole contention raised on appeal is that the trial court erred in refusing to permit defendant to present evidence going to his guilt for the purpose of showing that he had in good faith a reasonable belief that the prosecutrix was 18 years or more of age.

The undisputed facts show that the defendant and the prosecuting witness were not married and had been companions for several months prior to January 3, 1961—the date of the commission of the alleged offense. Upon that date the prosecutrix was 17 years and 9 months of age and voluntarily engaged in an act of sexual intercourse with defendant.

In support of his contention defendant relies upon Penal Code, section 20, which provides that "there must exist a union, or joint operation of act and intent, or criminal negligence" to constitute the commission of a crime. He further relies upon section 26 of that code which provides that one is not capable of committing a crime who commits an act under an ignorance or mistake of fact which disproves any criminal intent.

Thus the sole issue relates to the question of intent and

knowledge entertained by the defendant at the time of the commission of the crime charged.

Consent of the female is often an unrealistic and unfortunate standard for branding sexual intercourse a crime as serious as forcible rape. Yet the consent standard has been deemed to be required by important policy goals. We are dealing here, of course, with statutory rape where, in one sense, the lack of consent of the female is not an element of the offense. In a broader sense, however, the lack of consent is deemed to remain an element but the law makes a conclusive presumption of the lack thereof because she is presumed too innocent and naive to understand the implications and nature of her act. (*People* v. *Griffin*, 117 Cal. 583, 585 [49 P. 711, 59 Am.St.Rep. 216] ; *Golden* v. *Commonwealth*, 289 Ky. 379 [158 S.W.2d 967].) The law's concern with her capacity or lack thereof to so understand is explained in part by a popular conception of the social, moral and personal values which are preserved by the abstinence from sexual indulgence on the part of a young woman. An unwise disposition of her sexual favor is deemed to do harm both to herself and the social mores by which the community's conduct patterns are established. Hence the law of statutory rape intervenes in an effort to avoid such a disposition. This goal, moreover, is not accomplished by penalizing the naive female but by imposing criminal sanctions against the male, who is conclusively presumed to be responsible for the occurrence. (See *Elkins* v. *State,* 167 Tenn. 546 [72 S.W.2d 550].)

The assumption that age alone will bring an understanding of the sexual act to a young woman is of doubtful validity. Both learning from the cultural group to which she is a member and her actual sexual experiences will determine her level of comprehension. The sexually experienced 15-year-old may be far more acutely aware of the implications of sexual intercourse than her sheltered cousin who is beyond the age of consent. A girl who belongs to a group whose members indulge in sexual intercourse at an early age is likely to rapidly acquire an insight into the rewards and penalties of sexual indulgence. Nevertheless, even in circumstances where a girl's actual comprehension contradicts the law's presumption, the male is deemed criminally responsible for the act, although himself young and naive and responding to advances which may have been made to him.[1]

---

[1] The inequitable consequences to which we may be led are graphically illustrated by the following excerpt from *State* v. *Snow* (Mo. 1923) 252

The law as presently constituted does not concern itself with the relative culpability of the male and female participants in the prohibited sexual act. Even where the young woman is knowledgeable it does not impose sanctions upon her. The knowledgeable young man, on the other hand, is penalized and there are none who would claim that under any construction of the law this should be otherwise. However, the issue raised by the rejected offer of proof in the instant case goes to the culpability of the young man who acts *without* knowledge that an essential factual element exists and has, on the other hand, a positive, reasonable belief that it does not exist.

The primordial concept of *mens rea*, the guilty mind, expresses the principle that it is not conduct alone but conduct accompanied by certain specific mental states which concerns, or should concern, the law. In a broad sense the concept may be said to relate to such important doctrines as justification, excuse, mistake, necessity and mental capacity, but in the final analysis it means simply that there must be a ''joint operation of act and intent,'' as expressed in section 20 of the Penal Code, to constitute the commission of a criminal offense. The statutory law, however, furnishes no assistance to the courts beyond that, and the casebooks are filled to overflowing with the courts' struggles to determine just what state of mind should be considered relevant in particular contexts. In numerous instances culpability has been completely eliminated as a necessary element of criminal conduct in spite of the admonition of section 20 to the contrary. (See *In re Marley,* 29 Cal.2d 525 [175 P.2d 832] (shortweight); *People* v. *McClennegen,* 195 Cal. 445 [234 P. 91] (membership in organizations advocating criminal syndicalism); *People* v. *McCalla* 63 Cal.App. 783 [220 P. 436] (violation of Corporate Securities Act); *People* v. *Bickerstaff,* 46 Cal.App. 764 [190 P. 656] (sale of liquor).) More recently, however,

S.W. 629 at page 632: ''We have in this case a condition and not a theory. This wretched girl was young in years but old in sin and shame. A number of callow youths, of otherwise blameless lives ... fell under her seductive influence. They flocked about her, ... like moths about the flame of a lighted candle and probably with the same result. The girl was a common prostitute. . . . The boys were immature and doubtless more sinned against than sinning. They did not defile the girl. She was a mere 'cistern for foul toads to knot and gender in.' Why should the boys, misled by her, be sacrificed? What sound public policy can be subserved by branding them as felons? Might it not be wise to ingraft an exception in the statute?''

this court has moved away from the imposition of criminal sanctions in the absence of culpability where the governing statute, by implication or otherwise, expresses no legislative intent or policy to be served by imposing strict liability. (*People* v. *Stuart,* 47 Cal.2d 167 [302 P.2d 5, 55 A.L.R.2d 705]; *People* v. *Vogel,* 46 Cal.2d 798 [299 P.2d 850]; *People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40].)

Statutory rape has long furnished a fertile battleground upon which to argue that the lack of knowledgeable conduct is a proper defense. The law in this state now rests, as it did in 1896, with this court's decision in *People* v. *Ratz,* 115 Cal. 132, where it is stated at pages 134 and 135 [46 P. 915]: "The claim here made is not a new one. It has frequently been pressed upon the attention of courts, but in no case, so far as our examination goes, has it met with favor. The object and purpose of the law are too plain to need comment, the crime too infamous to bear discussion. The protection of society, of the family, and of the infant, demand that one who has carnal intercourse under such circumstances shall do so in peril of the fact, and he will not be heard against the evidence to urge his belief that the victim of his outrage had passed the period which would make his act a crime." The age of consent at the time of the *Ratz* decision was 14 years, and it is noteworthy that the purpose of the rule, as there announced, was to afford protection to young females therein described as "infants." The decision on which the court in *Ratz* relied was *The Queen* v. *Prince,* L.R. 1 Crown Cas. 154. However England has now, by statute, departed from the strict rule, and excludes as a crime an act of sexual intercourse with a female between the ages of 13 and 16 years if the perpetrator is under the age of 24 years, has not previously been charged with a like offense, and believes the female "to be of the age of sixteen or over and has reasonable cause for the belief." (Halsburg's Statutes of England (2d ed.) vol. 36, Continuation Volume 1956, at p. 219.)[2]

---

[2]The American Law Institute in its Model Penal Code (1962) provides in part as follows at pages 149 and 150:

"Section 213.6. Provisions Generally Applicable (Article 213 [Sexual Offenses].)

"(1) *Mistake as to Age.* Whenever in this Article the criminality of conduct depends upon a child's being below the age of 10, it is no defense that the actor did not know the child's age, or reasonably believed the child to be older than 10. When criminality depends upon the child's being below a critical age other than 10, it is a defense for the actor to prove that he reasonably believed the child to be above the critical age."

The rationale of the *Ratz* decision, rather than purporting to eliminate intent as an element of the crime, holds that the wrongdoer must assume the risk; that, subjectively, when the act is committed, he consciously intends to proceed regardless of the age of the female and the consequences of his act, and that the circumstances involving the female, whether she be a day or a decade less than the statutory age, are irrelevant.[3] There can be no dispute that a criminal intent exists when the perpetrator proceeds with utter disregard of, or in the lack of grounds for, a belief that the female has reached the age of consent. But if he participates in a mutual act of sexual intercourse, believing his partner to be beyond the age of consent, with reasonable grounds for such belief, where is his criminal intent? In such circumstances he has not consciously taken any risk. Instead he has subjectively eliminated the risk by satisfying himself on reasonable evidence that the crime cannot be committed. If it occurs that he has been misled, we cannot realistically conclude that for such reason alone the intent with which he undertook the act suddenly becomes more heinous.

While the specific contentions herein made have been dealt with and rejected both within and without this state, the courts have uniformly failed to satisfactorily explain the nature of the criminal intent present in the mind of one who in good faith believes he has obtained a lawful consent before engaging in the prohibited act. As in the *Ratz* case the courts often justify convictions on policy reasons which, in effect, eliminate the element of intent. The Legislature, of course, by making intent an element of the crime, has established the

---

[3] "When the law declares that sexual intercourse with a girl under the age of ten years is rape, it is not illogical to refuse to give any credence to the defense, 'I thought she was older, and I therefore did not believe that I was committing a crime when I had sexual intercourse with her.' ... But when age limits are raised to sixteen, eighteen, and twenty-one, when the young girl becomes a young woman, when adolescent boys as well as young men are attracted to her, the sexual act begins to lose its quality of abnormality and physical danger to the victim. Bona fide mistakes in the age of girls can be made by men and boys who are no more dangerous than others of their social, economic and educational level. . . . Even if the girl looks to be much older than the age of consent fixed by the statute, even if she lies to the man concerning her age, if she is a day below the statutory age sexual intercourse with her is rape. The man or boy who has intercourse with such girl still acts at his peril. *The statute is interpreted as if it were protecting children under the age of ten.*" (Italics added.) (Plascowe, Sex and Law (1951) at pp. 184 and 185.)

prevailing policy from which it alone can properly advise us to depart.

We have recently given recognition to the legislative declarations in sections 20 and 26 of the Penal Code, and departed from prior decisional law which had failed to accord full effect to those sections as applied to charges of bigamy. (*People* v. *Vogel, supra,* 46 Cal.2d 798.) We held there that a good faith belief that a former wife had obtained a divorce was a valid defense to a charge of bigamy arising out of a second marriage when the first marriage had not in fact been terminated. Pertinent to the instant contention that defendant's intent did not suddenly become more criminal because it later developed that he had been misled by the prosecutrix, are the following comments appearing in *Vogel* at page 804: ''Nor would it be reasonable to hold that a person is guilty of bigamy who remarries in good faith in reliance on a judgment of divorce or annulment that is subsequently found not to be the 'judgment of a competent court'. . . . Since it is often difficult for laymen to know when a judgment is not that of a competent court, we cannot reasonably expect them always to have such knowledge and make them criminals if their bona fide belief proves to be erroneous.'' Certainly it cannot be a greater wrong to entertain a bona fide but erroneous belief that a valid consent to an act of sexual intercourse has been obtained.

Equally applicable to the instant case are the following remarks, also appearing at page 804 of the *Vogel* decision: ''The severe penalty imposed for bigamy, the serious loss of reputation conviction entails, . . . and the fact that it has been regarded for centuries as a crime involving moral turpitude, make it extremely unlikely that the Legislature meant to include the morally innocent to make sure the guilty did not escape.''

█ We are persuaded that the reluctance to accord to a charge of statutory rape the defense of a lack of criminal intent has no greater justification than in the case of other statutory crimes, where the Legislature has made identical provision with respect to intent. '' 'At common law an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense. . . . So far as I am aware it has never been suggested that these exceptions do not equally apply to the case of statutory offenses unless they are excluded expressly or by

necessary implication.' '' (*Matter of Application of Ahart,* 172 Cal. 762, 764-765 [159 P. 160], quoting from *Regina* v. *Tolson,* [1889] 23 Q.B.D. 168, s.c., 40 Alb.L.J. 250.) Our departure from the views expressed in *Ratz* is in no manner indicative of a withdrawal from the sound policy that it is in the public interest to protect the sexually naive female from exploitation. No responsible person would hesitate to condemn as untenable a claimed good faith belief in the age of consent of an "infant" female whose obviously tender years preclude the existence of reasonable grounds for that belief. However, the prosecutrix in the instant case was but three months short of 18 years of age and there is nothing in the record to indicate that the purposes of the law as stated in *Ratz* can be better served by foreclosing the defense of a lack of intent. This is not to say that the granting of consent by even a sexually sophisticated girl known to be less than the statutory age is a defense.[4] We hold only that, in the absence of a legislative direction otherwise, a charge of statutory rape is defensible wherein a criminal intent is lacking.

For the foregoing reasons *People* v. *Ratz, supra,* 115 Cal. 132, and *People* v. *Griffin, supra,* 117 Cal. 583 are overruled, and *People* v. *Sheffield,* 9 Cal.App. 130 [98 P. 67] is disapproved to the extent that such decisions are inconsistent with the views expressed herein.

Some question has been raised that the offer of proof of defendant's reasonable belief in the age of the prosecutrix was insufficient to justify the pleading of such belief as a defense to the act. It is not our purpose here to make a determination that the defendant entertained a reasonable belief. Suffice to state that the offer demonstrated a sufficient basis upon which, when fully developed, the trier of fact might have found in defendant's favor. We conclude that it was reversible error to reject the offer.

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.

---

[4]See an article on forcible and statutory rape in 62 Yale Law Journal (1952) which concludes at page 82 as follows:

''The crime of statutory rape is unsupportable in its present form. Neither the policies underlying the law nor public sentiment warrants the imposition of rape penalties solely because of the girl's youth. By making the presumption of the underage girl's incapacity rebuttal, [rebuttable] the law would continue to protect the 'naive.' But although legally underage, the girl who is past puberty and sexually sophisticated would be capable of granting operative consent to sexual intercourse.''