THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ISMAEL HERNÁNDEZ, Defendant and Appellant.

No. CR-65-50.       Decided March 31, 1966.

*Víctor Tirado Saltares* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Appellant was accused of having sexual intercourse with a woman who was incapable of giving legal consent. The information is based on subsection two of § 255 of the Penal Code, 33 L.P.R.A. § 961. It provides as follows:

"Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under any of the following circumstances:

"1. . . . . . .

"2. Where she is incapable, through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent."

Appellant was twenty years old at the time of the events for which he is tried. The signature which appears in a sworn statement given before the prosecuting attorney shows that he hardly knows how to write. The prosecutrix was then twenty-four years old. She was mentally retarded. She asked him to take her away. Thus he did.

The prosecutrix' mother testified that the defendant did not know that her daughter was abnormal. She stated that "he does not know it because he did not go there frequently, and he does not know it" (Tr. Ev. 65) ; that the prosecutrix had never talked with the defendant before the day of the events (Tr. Ev. 41). She testified that she (the prosecutrix) was not in the habit of seeing appellant; that "he [appellant] used to see his sister. Then, he sent her [the prosecutrix] messages with his sister." (Tr. Ev. 58.) The prosecutrix herself testified that as a rule she did not talk with the defendant (Tr. Ev. 88). The evidence also reveals that the prosecutrix carried out housework and took care of a five-

year-old sister, in charge of whom she remained alone in the house.

Six days after the occurrence of the events which gave rise to the information, appellant appeared before the prosecuting attorney. He gave a sworn statement before the latter. In it he stated that he courted the prosecutrix, that the day of the events she "came out of her house and then asked me if I wanted to take her away with me . . .". He testified moreover that he did not speak to her because "people told me not to mind her because she was a half-wit." Then the prosecuting attorney asked him "Do you believe that she is a half-wit?" and he answered "No, because she washes, irons, and cooks, what I think is that she is feeble-minded, since when you talk to her, she puts her head down and does not talk to you and things like that."

At the close of the evidence for the prosecution the defendant waived the right that the trial be continued by jury. He introduced no evidence. He submitted the case "on the same evidence introduced by the prosecuting attorney."

■ The evidence introduced, aside from defendant's sworn statement establishes positively that appellant was not aware of her condition. But in the light of *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965), that statement was not admissible.

It would be appropriate, in view of the foregoing, to reverse the judgment which ordered appellant to serve from 1 to 3 years in the penitentiary and to remand the case for a new trial, but inasmuch as it appears from the evidence for the prosecution that the defendant was not aware of the mental condition of the prosecutrix, it is fairer to consider now the effect of that circumstance on appellant's criminal liability, for if it exempted him from liability it would not be reasonable to submit him to a new trial.

Almost forty years ago in *People* v. *Rivera*, 38 P.R.R. 103 (1928), we held that in the offense punished by the above-

copied section "[t]he feature of knowledge that the woman is insane plays no role" since "[t]he Legislature, as in other statutory crimes, milk cases, for example, has left the question of knowledge aside." In support of our position we cited *People* v. *Griffin*, 49 Pac. 711; 117 Cal. 583 (1897).

■ Recently the Supreme Court of California in *People* v. *Hernández*, 393 P.2d 673 (1964) upon considering the appeal of a defendant convicted of having sexual intercourse with a girl under the age established in the statute, overruled, among others, *Griffin* and although we have repeatedly stated that the decision of that court even in the cases where statutory provisions the same as ours are construed, are not binding upon us, *People* v. *Matos*, 83 P.R.R. 323 (1961); *Reyes* v. *Superior Court*, 84 P.R.R. 27 (1961); *cf. Belaval* v. *Sec. of the Treasury*, 83 P.R.R. 244 (1961), we can find their reasonings valuable. The importance of the question involved concerning the fair interpretation of a penal provision, imposes a new consideration of the matter in the light of the doctrine established in *People* v. *Hernández*.

In *Hernández* the defendant tried to introduce evidence to show that he believed in good faith that the prosecutrix was beyond the age established in the act which defined the offense of statutory rape. The evidence was not admitted. *People* v. *Ratz*, 115 Cal. 132 (1896) upheld the decision of the court.[1] On appeal, he assigns this as error.

The Supreme Court of California invoking §§ 20 and 26 of the Penal Code of that state (corresponding to §§ 11 and 39 of the Penal Code of Puerto Rico) concluded that the grounded and bona fide belief that the woman was over

---

[1] It is interesting to note that when *Ratz* was decided, the court relied principally on an English case, *Regina* v. *Prince*, 2 Crown Cas. 154, which had been set aside by an act of Parliament which permitted the defendant to establish in his defense that he had reasonable grounds to believe that the victim was beyond the age established in the statute. Criminal Law Amendment Act 1885 (48 & 49 Vict.; c69, § 5(1)–(2)).

the age fixed in the statute constituted a defense in cases of rape.

The first of these two provisions provides that "in every crime or public offense there must exist a union or joint operation of act and intent or criminal negligence" and the second that "all persons are capable of committing crimes except those belonging to the following classes: . . . . (5) Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent."

■ In applying the above provisions the court concludes that the intent is a necessary ingredient in the offense of statutory rape. It considers then *Ratz, supra,* decided in 1896, which established the rule that it was not necessary to establish intent as an element of the offense of statutory rape and it states the following:

"The rationale of the Ratz decision, rather than purporting to eliminate intent as an element of the crime, holds that the wrongdoer must assume the risk; that, subjectively, when the act is committed, he consciously intends to proceed regardless of the age of the female and the consequences of his act, and that the circumstances involving the female, whether she be a day or a decade less than the statutory age, are irrelevant. There can be no dispute that a criminal intent exists when the perpetrator proceeds with utter disregard of, or in the lack of grounds for, a belief that the female has reached the age of consent. But if he participates in a mutual act of sexual intercourse, believing his partner to be beyond the age of consent, with reasonable grounds for such belief, where is his criminal intent? In such circumstances he has not consciously taken any risk. Instead he has subjectively eliminated the risk by satisfying himself on reasonable evidence that the crime cannot be committed. If it occurs that he has been misled, we cannot realistically conclude that for such reason alone the intent with which he undertook the act suddenly becomes more heinous.

"While the specific contentions herein made have been dealt with and rejected both within and without this state, the courts have uniformly failed to satisfactorily explain the nature of the

criminal intent present in the mind of one who in good faith believes he has obtained a lawful consent before engaging in the prohibited act. As in the Ratz case the courts often justify convictions on policy reasons which, in effect, eliminate the element of intent. The Legislature, of course, by making intent an element of the crime, has established the prevailing policy from which it alone can properly advise us to depart.

．　　　．　　　．　　　．　　　．　　　．　　　．　　　．

"We are persuaded that the reluctance to accord to a charge of statutory rape the defense of a lack of criminal intent has no greater justification than in the case of other statutory crimes, where the Legislature has made identical provision with respect to intent. . . . Our departure from the views expressed in Ratz is in no manner indicative of a withdrawal from the sound policy that it is in the public interest to protect the sexually naive female from exploitation. No responsible person would hesitate to condemn as untenable a claimed good faith belief in the age of consent of an 'infant' female whose obviously tender years preclude the existence of reasonable grounds for that belief. However, the prosecutrix in the instant case was but three months short of 18 years of age and there is nothing in the record to indicate that the purposes of the law as stated in Ratz can be better served by foreclosing the defense of a lack of intent. This is not to say that the granting of consent by even a sexually sophisticated girl known to be less than the statutory age is a defense. We hold only that in the absence of a legislative direction otherwise, a charge of statutory rape is defensible wherein a criminal intent is lacking."

After stating the foregoing, the Supreme Court of California not only overrules *Ratz* but also *People* v. *Griffin*, *supra.* In *Griffin* the prosecutrix was a feeble-minded girl. See 4 Am. Crim. Law Q. 57 (1965).

Historically, intent has always been an essential element in order to consider an act a public offense. *Morissette* v. *United States*, 342 U.S. 246 (1952) ; Myers, *Reasonable Mistakes of Age: A Needed Defense to Statutory Rape*, 6 Mich. L . Rev. 105 (1965). With the economic development, the growth in population, the industrial and social revolution

experienced by the world during the past hundred years, problems arose as to the best manner of protecting the health and welfare of the community. There was the need to regulate activities such as the sale and distribution of foodstuffs, highway traffic, and others which we need not mention here. For the protection of the public, lawmakers approved elaborate regulations for all those activities; for a better control they made the violation thereof an offense and omitted intent as an ingredient to those offenses. In *Morissette, supra*, the Supreme Court considers this feature of the penal law in detail. *Cf. People* v. *Ruiz*, 85 P.R.R. 463 (1962). See also Dubin, *Mens Rea*, 18 Stan. L. Rev. 322 (1966).

The courts gave that same treatment to certain sex offenses. It was held by the courts that no criminal intent had to exist in acts committed on adolescents and persons incapable of consenting because of their mental condition. Intent was present in defendant's decision to act, assuming the risk. It was thus sought to protect young girls of tender years, the family, and society. The acceptance of this doctrine by the courts led to strong and well reasoned criticisms. *Forcible and Statutory Rape*, 62 Yale L.J. 55 (1952). But as it was expressed in *Hernández* there is a case law tendency to depart from that doctrine unless the legislative intent of imposing unlimited liability can be inferred from the statute, by implication or otherwise. That is, unless the Legislature expressly eliminates intent as an essential element of an offense. The doctrine contained in *Hernández* has been generally accepted in the comments published in law journals. To that effect see, Myers, *Reasonable Mistake of Age, supra;* Tonry, *Statutory Rape: A Critique*, 26 La. L. Rev. 105 (1965) and the annotations in 27 Ala. L. Rev. 101 (1964); 14 Catholic U.L. Rev. 123 (1965); 14 De Paul L. Rev. 449 (1965); 53 Geo. L.J. 506 (1965); 33 Geo. Wash. L. Rev. 588 (1964); 16 Hastings L.J. 270 (1964) (see footnote 27); 78 Harv. L. Rev. 1257 (1965); 5 J. Family Law 107

(1965); 50 Minn. L. Rev. 170 (1965); 43 N.C. L. Rev. 424 (1965); 17 Stan. L. Rev. 309 (1965); 16 Syracuse L. Rev. 148 (1964); 37 U. Colorado L. Rev. 295 (1965); 22 Wash. and Lee L. Rev. 119 (1965); (*Contra*) 38 So. Cal. L. Rev. 131 (1965).

■ ■ There is nothing in the statutory provision allegedly violated by appellant to indicate that the Legislature eliminated intent as an ingredient of that offense. On the contrary the provisions of §§ 11 and 39 of the Penal Code above-copied and which served as ground to the case of *Hernández* are present. If it is accepted that in cases of statutory rape to believe in good faith that the prosecutrix is beyond the age established in the law which punishes the offense constitutes a defense, not being aware of the prosecutrix's mental condition should constitute, more reasonably, a defense. See Note, 16 Hastings L.J. *supra*, footnote 27. Apparently it has thus been understood for when the defense that the defendant in good faith believed that the prosecutrix was over the age established by statute, was not accepted in any of the American jurisdictions, in some jurisdictions ignorance of the mental condition constituted a defense. *Wilson* v. *Commonwealth*, 160 S.W.2d 649 (Ky. 1942); *Commonwealth* v. *Stephens*, 17 A.2d 919 (Penn. 1941); 4 Burns Ann. Indiana Statutes § 10-4201; 9 La. Revised Stat. Ann. § 14.43; 3 Ann. Code of Maryland § 462; Page's Ohio Revised Code Ann. Title 29, § 2905.06; Texas, Vernon's Ann. P.C. art. 1183; West's Wis. Statutes Ann. § 944.02.[2]

---

[2] In Spain offense is likewise not committed if the defendant is not acquainted with the prosecutrix's mental condition. Section 429 of the Spanish Penal Code provides:

"Rape is an act of sexual intercourse, accomplished with a female under any of the following circumstances:

"1. Where threat or force is used.

"2. Where the female is mentally unsound or unconscious for any reason.

"3. Where the female is under the age of twelve years, even though

In the Model Penal Code, published by the American Law Institute, it is required that the defendant know of the mental condition of the prosecutrix in order to constitute offense. To that effect it provides:

Section 213.1 (2)

"A male who has sexual intercourse with a female not his wife commits a felony of the third degree if:

"(a) . . . . . . .

"(b) he knows that she suffers from a mental disease or defect which renders her incapable of appraising the nature of her conduct. . . ."[3] Model Penal Code (Proposed Official Draft 1962).

Then, it is reasonable in cases of statutory rape, as in the case at bar, that the defendant have the opportunity to

---

the circumstances enumerated above are not present."

Rodríguez Navarro in his book *Doctrina Penal del Tribunal Supremo,* Vol. II at 3341, cites a judgment of the Supreme Court of Spain of October 15, 1931, as follows:

"Since the defendants did not know of the mental abnormality of the twenty year old prosecutrix, and as she did not show signs of such condition, the characteristic elements of the offense of rape are lacking, pursuant to this section, inasmuch as, according to the facts proved, no force or threat was used."

[3] Commenting on this provision the proponents state:

"Subsection (2) (b) is a much-narrowed version of a provision which evoked considerable resistance at the 1955 meeting, and which the Reporters agreed to reconsider. The earlier version would have made it a felony for a man to have intercourse with a woman if he knew that she submitted because of 'substantially complete incapacity to appraise or control' her own conduct because of mental illness, intoxication, etc. There was a somewhat complicated clause designed to exclude situations where intercourse occurred following joint indulgence in drugs or liquor. The revised draft limits criminality to situations of known mental disease or defect so serious as to render the woman 'incapable of appraising the nature of her own conduct.' Conditions affecting only the woman's capacity to 'control' herself sexually will not involve criminal liability. Also, by specifying that the woman must lack capacity to appraise 'the nature' of her conduct, we make it clear that we are not talking about appraisals involving value judgments or consideration of remote consequences of the immediate acts. The typical case that remains within the revised clause would be the case of intercourse with a woman known to the defendant to be manifestly and seriously deranged."

establish that he did not know that the prosecutrix was mentally retarded. It is not to impose upon the prosecuting attorney the obligation to establish that the defendant was acquainted with the fact of the mental condition, but that the defendant may establish as a defense that he was not acquainted with that fact. The punishment for the violation of the provision, the social sanction that it involves, make it fair and reasonable to offer him the opportunity to establish that fact before the court so that the latter weigh it with the rest of the evidence.

In the instant case the prosecutrix urges appellant to take her and they have consensual intercourse. Appellant is evidently a person of scarce education, he hardly knows how to write. The prosecutrix is an adult female to whom her parents entrusted the care of the house and of a girl five years old. The evidence for the prosecution established that the defendant did not know of the prosecutrix' mental condition.

Clearly there is no criminal intent. By all means it would be unfair to punish appellant to serve sentence in the penitentiary when the facts reveal that his action lacked criminal intent.

*People* v. *Rivera,* 38 P.R.R. 103 (1928) is overruled.

For the reasons stated in the foregoing opinion, it is appropriate to reverse the judgment appealed from and to acquit defendant.

Mr. Justice Blanco Lugo believes that the appropriate thing is to remand the case for a new trial wherein the issue on appellant's knowledge of the prosecutrix' mental condition may be argued with all the elements of evidence available to the prosecuting attorney and the defense in the light of the ruling established now. Mr. Justice Ramírez Bages agrees with this view.