EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ISMAEL HERNÁNDEZ, acusado y apelante.

*Número:* CR-65-50      *Resuelto:* 31 de marzo de 1966

*Víctor Tirado Saltares,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El apelante fue acusado de yacer con una mujer que estaba impedida de prestar legalmente su consentimiento. La acusación está fundada en el segundo inciso del Art. 255 del Código Penal, 33 L.P.R.A. sec. 961. Dispone así:

"Se comete violación, yaciendo con una mujer que no fuere la propia, en cualquiera de los casos siguientes:

"1. . . . .

"2. Si por demencia u otro defecto mental, temporal o permanente, estuviere incapacitada para consentir legalmente."

El apelante a la fecha de los hechos por los cuales se le juzga tenía veinte años de edad. La firma que aparece en una declaración jurada que prestó ante el fiscal demuestra que apenas sabe escribir. La perjudicada· tenía entonces veinticuatro años. Era una retardada mental. Le pidió al apelante que se la llevara. Así éste lo hizo.

La madre de la perjudicada declaró que el acusado no sabía que su hija era anormal. Afirmó que "él no lo sabe porque como él no iba cada rato allá, pues él no lo sabe" (T.E. pág. 65); que la perjudicada nunca antes del día de los hechos había hablado con el acusado (T.E. pág. 41). Declaró que ésta no acostumbraba verse con el apelante; que "él [el apelante] acostumbraba verse con una hermana. Entonces le mandaba él mensajes con la hermana de él." (T.E. pág. 58.) La propia perjudicada declaró que no acostumbraba hablar con el acusado (T.E. pág. 88). La prueba además revela que la perjudicada atendía labores del hogar y cuidaba de una hermanita de cinco años de edad, a cargo de la cual quedaba sola en la casa.

Seis días después de ocurridos los hechos que dieron margen a la acusación, el apelante compareció ante el fiscal. Ante él prestó una declaración jurada. En la misma hizo constar que llevó relaciones de noviazgo con la perjudicada; que el día de los hechos ésta "se salió de la casa de ella y entonces me dijo que si yo me la quería llevar. . . ." Declaró además que él no hablaba con ella porque "la gente me decía que no le hiciera caso porque era y que ida de mente". Entonces el fiscal le pregunta "¿Usted cree que es ida de mente?" y contesta "No, porque ella lava y plancha y cocina, yo lo creo que es abobada. Pues, que cuando uno le habla, baja la cabeza y no habla a uno y cosas así".

Al terminar la prueba de cargo el acusado renunció a que el juicio continuase ventilándose ante jurado. No presentó prueba. Sometió el caso "con la misma prueba presentada por el Ministerio Público".

La prueba presentada, aparte de la declaración prestada por el acusado ante el fiscal, establece afirmativamente que el apelante no tenía conocimiento de su estado. Pero a la luz de *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965), esa declaración no era admisible.

Procedería, en vista de lo anterior, revocar la sentencia que condenó al apelante a cumplir de 1 a 3 años de presidio y devolver el caso para un nuevo juicio, pero surgiendo de la prueba fiscal que el acusado no tenía conocimiento del estado mental de la perjudicada, resulta más justo considerar ahora el efecto que esa circunstancia tiene en la responsabilidad criminal del apelante, pues si ello lo eximía de responsabilidad no sería razonable someterlo de nuevo a juicio.

Hace casi cuarenta años en *Pueblo* v. *Rivera,* 38 D.P.R. 115 (1928) resolvimos que en el delito castigado por el artículo transcrito anteriormente "[e]l conocimiento de que la mujer está loca no desempeña papel alguno" ya que "[l]a Legislatura al igual que en otros delitos estatutarios, como por ejemplo, en los casos de adulteración de leche, ha dejado a un lado la cuestión del conocimiento". Citamos en apoyo de de nuestra posición a *People* v. *Griffin,* 49 Pac. 711; 117 Cal. 583 (1897).

Recientemente la Corte Suprema de California en *People* v. *Hernández,* 393 P.2d 673 (1964) al considerar la apelación de un acusado convicto de tener relaciones con una joven menor de la edad establecida en el estatuto, entre otros, revocó a *Griffin* y aunque repetidamente hemos expresado que las decisiones de ese tribunal aun en los casos que interpretan disposiciones estatutarias iguales a las nuestras, no nos obligan, *Pueblo* v. *Matos,* 83 D.P.R. 335 (1961); *Reyes* v. *Tribunal Superior,* 84 D.P.R. 29 (1961); cf. *Belaval* v. *Srio. de Hacienda,* 83 D.P.R. 251 (1961), podemos encontrar válidos sus razonamientos. La trascendencia de la cuestión envuelta relacionada con la justa interpretación de una disposición penal, impone una nueva consideración del asunto a la luz de la doctrina sentada en *People* v. *Hernández.*

En *Hernández* el acusado trató de presentar prueba para demostrar que de buena fe creía que la perjudicada sobrepasaba la edad establecida en la ley que definía el delito de violación técnica. La evidencia no fue admitida. *People* v.

*Ratz*, 115 Cal. 132 (1896) sostenía la resolución del tribunal. (¹) En apelación apunta esto como error.

El Tribunal Supremo de California invocando los Arts. 20 y 26 del Código Penal de aquel estado (correspondientes a los Arts. 11 y 39 del Código Penal de Puerto Rico) concluyó que constituía defensa en casos de violación la creencia fundada y de buena fe de que la mujer era mayor de la edad fijada en el estatuto.

Dispone el primero de estos dos preceptos que "[e]n todo delito o delincuencia pública deberá existir unión o simultaneidad entre el acto y la intención o negligencia criminal" y el segundo que "[t]odas las personas son capaces de cometer crímenes, excepto los pertenecientes a las siguientes clases: . . . (5) Las personas que cometieren el acto o incurrieren en la omisión imputada, por ignorancia o una apreciación errónea de hecho, que justificare la ausencia de todo intento criminal".

■ Al aplicar los anteriores preceptos el tribunal concluye que la intención es ingrediente necesario en el delito de violación técnica. Considera entonces el caso de *Ratz*, supra, resuelto en el año 1896, que estableció la regla de que era innecesario establecer la intención como elemento del delito de violación técnica y expresa lo siguiente:

"Los fundamentos de la decisión de Ratz, más bien que pretender eliminar la intención como elemento del crimen, sostiene que el malhechor tiene que asumir el riesgo; que, subjetivamente, cuando el acto es cometido, él conscientemente se propone actuar sin atención a la edad de la mujer y las consecuencias de sus actos, y que las circunstancias relativas a la mujer, si es un día o una década menor que la edad estatutaria, son impertinentes.

(¹) Es interesante apuntar que cuando se resolvió a *Ratz* la corte fundó su fallo principalmente en un caso inglés *Regina* v. *Prince*, 2 Crown Cas. 154, que había sido dejado sin efecto por una ley del Parlamento que permitía que el acusado estableciera en su defensa que razonablemente tenía motivos para creer que la víctima sobrepasaba la edad establecida en el estatuto. Criminal Law Amendment Act 1885 (48 & 49 Vict.; c69, Sec. 5(1)–(2)).

No debe haber disputa en cuanto a que la intención criminal existe cuando el perpetrador procede con absoluta indiferencia de, o en ausencia de fundamentos para, una creencia de que la mujer ha llegado a la edad del consentimiento. Pero si él participa en un acto mutuo de relación sexual creyendo que su compañera está sobre la edad del consentimiento, con motivos razonables para esta creencia, ¿dónde está la intención criminal? En tales circunstancias él no ha asumido riesgo alguno concientemente. En vez, él ha eliminado subjetivamente el riesgo satisfaciéndose a sí mismo sobre evidencia razonable de que el crimen no puede ser cometido. Ocurre que ha sido engañado, no podemos concluir realísticamente que por tal razón únicamente la intención con la cual procedió al acto de repente se torna más infame.

"Aunque las contenciones específicas que se han hecho aquí han sido consideradas y rechazadas tanto dentro como fuera de este estado, las cortes uniformemente han fallado en explicar satisfactoriamente la naturaleza de la intención criminal presente en la mente del que de buena fe cree que ha obtenido un consentimiento legal antes de proceder al acto prohibido. Como en el caso de Ratz, las cortes a menudo justifican convicciones en razones de política que de hecho eliminan el elemento de la intención. La Legislatura, claro está, al hacer la intención un elemento del crimen, ha establecido la política prevaleciente que únicamente ella nos puede sugerir abandonar.

. . . . . . . . .

"Estamos convencidos de que la renuencia en conceder en una acusación de violación técnica la defensa de falta de intención criminal no tiene mayor justificación que en el caso de otros crímenes donde la Legislatura ha hecho idéntica provisión respecto a la intención . . . Al apartarnos del criterio expresado en Ratz no es en manera alguna indicativa de un abandono de la política de que es en el interés público proteger de la explotación a la mujer sexualmente ingenua. Ninguna persona responsable vacilaría en condenar como insostenible una alegada creencia de buena fe en la edad de consentimiento de una niña de edad infantil cuya tierna edad impide la existencia de base razonable para tal creencia. Sin embargo, la perjudicada en el presente caso era solamente tres meses menor de 18 años de edad y no hay nada en el récord que indique que el propósito de la ley según enunciada en Ratz puede servirse mejor excluyendo la defensa de falta de

intención. Esto no quiere decir que la prestación del consentimiento aun por una niña sexualmente madura conocida como menor que la edad estatutaria es una defensa. Resolvemos únicamente que en la ausencia de una norma legislativa en contrario, una acusación de violación técnica es defendible donde falta una intención criminal."

Luego de expresar lo anterior, el Tribunal Supremo de California no sólo revoca a *Ratz* sino que también revoca a *People* v. *Griffin*, supra. En *Griffin*, la perjudicada era una retardada mental. Véase 4 Am. Crim. L. Q. 57 (1965).

Históricamente siempre la intención ha sido elemento indispensable para que un acto se considere delito público. *Morissette* v. *United States*, 342 U.S. 246 (1952); Myers, *Reasonable Mistake of Age: A Needed Defense to Statutory Rape*, 6 Mich. L. Rev. 105 (1965). Con el desarrollo de la economía, el crecimiento de las poblaciones, la revolución industrial y social que el mundo ha estado viviendo durante los últimos cien años surgieron problemas en cuanto a la mejor forma de proteger la salud y el bienestar de la comunidad. Hubo necesidad de reglamentar actividades tales como la venta y distribución de productos alimenticios, el tráfico por las carreteras y otras que no es necesario especificar. Los legisladores en protección del público aprobaron reglamentaciones extensas de todas esas actividades; para un mejor control hicieron delito su violación, y dispensaron la intención como ingrediente de esos delitos. En *Morissette*, supra, el Tribunal Supremo considera extensamente este aspecto del derecho penal. Cf. *Pueblo* v. *Ruíz Vélez*, 85 D.P.R. 482 (1962). Ver además Dubin, *Mens Rea*, 18 Stan. L. Rev. 322 (1966).

Las cortes le dieron ese mismo tratamiento a ciertos delitos sexuales. Se sostuvo por los tribunales que no tenía que existir intención criminal en los actos cometidos en adolescentes y en personas impedidas de consentir por su condición mental. La intención estaba presente en la decisión del acusado de actuar, asumiendo el riesgo. Se pretendía pro-

teger así a las jóvenes de tierna edad, a la familia y a la sociedad. La aceptación de esta doctrina por los tribunales conllevó fuertes y bien razonadas críticas. *Forcible and Statutory Rape*, 62 Yale L.J. 55 (1952). Pero como se expresó en *Hernández* existe una tendencia jurisprudencial de apartarse de esa doctrina a menos que del estatuto, por implicación o por cualquier otra forma, pueda deducirse la intención legislativa de imponer una responsabilidad ilimitada. Esto es, a menos que la Asamblea Legislativa expresamente elimine la intención como elemento esencial de un delito. La doctrina enunciada en *Hernández* ha tenido general aceptación en los comentarios publicados en las revistas jurídicas. A ese efecto véanse, Myers, *Reasonable Mistake of Age*, supra; Tonry, *Statutory Rape: A Critique*, 26 La. L. Rev. 105 (1965) y las notas que aparecen en 27 Ala. L. Rev. 101 (1964) ; 14 Catholic U.L. Rev. 123 (1965) ; 14 De Paul L. Rev. 449 (1965) ; 53 Geo. L.J. 506 (1965) ; 33 Geo. Wash. L. Rev. 588 (1964) ; 16 Hastings L.J. 276 (1964) (ver escolio 27) ; 78 Harv. L. Rev. 1257 (1965) ; 5 J. Family Law 107 (1965) ; 50 Minn. L. Rev. 170 (1965) ; 43 N.C.L. Rev. 424 (1965) ; 17 Stan. L. Rev. 309 (1965) ; 16 Syracuse L. Rev. 148 (1964) ; 37 U. Colorado L. Rev. 295 (1965) ; 22 Wash. & Lee L. Rev. 119 (1965) ; (Contra) 38 So. Cal. L. Rev. 131 (1965).

Nada hay en la disposición estatutaria que se alega infringida por el apelante, que indique que la Asamblea Legislativa eliminó la intención como ingrediente de ese delito. Por el contrario están presentes las disposiciones de los Arts. 11 y 39 del Código Penal antes transcritas y que sirvieron de fundamento al caso de *Hernández*. Si se acepta que en casos de violación técnica constituye defensa creer de buena fe que la perjudicada sobrepasa la edad establecida en la ley que castiga el delito, con más razón debe constituir defensa el no tener conocimiento del estado mental de la perjudicada. Ver Nota 16, Hastings L.J. *supra*, escolio 27.

Aparentemente así se ha entendido pues cuando no se aceptaba en ninguna de las jurisdicciones americanas la defensa de que el acusado de buena fe creía que la acusada sobrepasaba la edad establecida en la ley, en algunas jurisdicciones la ignorancia del estado mental constituía una defensa. *Wilson* v. *Commonwealth,* 160 S.W.2d 649 (Ky. 1942); *Commonwealth* v. *Stephens,* 17 A.2d 919 (Penn. 1941); 4 Burns Ann. Indiana Statutes sec. 10–4201; 9 La. Revised Stat. Ann. sec. 14.43; 3 Ann. Code of Maryland sec. 462; Page's Ohio Revised Code Ann. Title 29 sec. 2905.06; Texas Vernon's Ann. P.C. art. 1183; West's Wis. Statutes Ann. sec. 944.02. (²)

En el Código Penal Modelo, que auspicia el American Law Institute se requiere que el acusado tenga conocimiento del estado mental de la perjudicada para que constituya delito. A ese efecto dispone:

Sección 213.1(2).

"Un hombre que tenga relaciones sexuales con una mujer que no sea su esposa incurre en un delito grave de tercer grado si:
"(a) . . . .

---

(²) En España tampoco se comete delito si el acusado desconoce el estado mental de la perjudicada. El Art. 429 del Código Penal Español dispone:

"Se comete violación yaciendo con una mujer en cualquiera de los casos siguientes:

"1.° Cuando se usare de fuerza o intimidación.

"2.° Cuando la mujer se hallare privada de razón o de sentido por cualquier causa.

"3.° Cuando fuere menor de doce años cumplidos, aunque no concurriere ninguna de las circunstancias expresadas en los dos números anteriores."

Rodríguez Navarro en la obra Doctrina Penal del Tribunal Supremo, Tomo Segundo a la pág. 3341 cita una sentencia del Tribunal Supremo de España de 15 de octubre de 1931 en los siguientes términos:

"Cuando los procesados desconocían la anormalidad mental de la ofendida, de veinte años, sin que tampoco lo manifestase por signos exteriores, faltan los elementos característicos del delito de violación, según este artículo, ya que, según los hechos probados, no se empleó fuerza ni intimidación."

"(b) tiene conocimiento de que ella sufre de una enfermedad o defecto mental que la hace incapaz de apreciar la naturaleza de su conducta . . .".(³) Model Penal Code (Proposed Official Draft 1962).

Es pues razonable en casos de violación técnica, como el que nos ocupa, que el acusado tenga la oportunidad de establecer que no tenía conocimiento de que la perjudicada fuera una retardada mental. No es imponerle al fiscal la obligación de establecer que el acusado conocía el hecho de la condición mental, sino que el acusado puede establecer como defensa que no tenía conocimiento de ese hecho. La pena que conlleva la violación del precepto, la sanción social que entraña, hacen justo y razonable el que se le ofrezca la oportunidad de establecer ese hecho ante el tribunal para que éste lo aquilate con el resto de la prueba.

En el presente caso la perjudicada insta al apelante que se la lleve y tienen relaciones de mutuo agrado. El apelante evidentemente es una persona de escasa instrucción, apenas sabe escribir. La perjudicada es una mujer adulta a quien sus padres le encomendaban el cuidado de la casa y de una niña de cinco años. La prueba de cargo estableció que el

---

(³) Comentando esta disposición los proponentes expresan:

"Subsection (2) (b) is a much-narrowed version of a provision which evoked considerable resistance at the 1955 meeting, and which the Reporters agreed to reconsider. The earlier version would have made it a felony for a man to have intercourse with a woman if he knew that she submitted because of 'substantially complete incapacity to appraise or control' her own conduct because of mental illness, intoxication, etc. There was a somewhat complicated clause designed to exclude situations where intercourse occurred following joint indulgence in drugs or liquor. The revised draft limits criminality to situations of known mental disease or defect so serious as to render the women 'incapable of appraising the nature of her own conduct.' Conditions affecting only the woman's capacity to 'control' herself sexually will not involve criminal liability. Also, by specifying that the woman must lack capacity to appraise 'the nature' of her conduct, we make it clear that we are not talking about appraisals involving value judgments or consideration of remote consequences of the immediate acts. The typical case that remains within the revised clause would be the case of intercourse with a woman known to the defendant to be manifestly and seriously deranged."

acusado no tenía conocimiento de la condición mental de la perjudicada.

Claramente no hay intención criminal. Sería a todas luces injusto condenar al apelante a sufrir una pena de presidio cuando los hechos revelan que su actuación carecía de intención criminal.

*Pueblo* v. *Rivera*, 38 D.P.R. 115 (1928) queda revocado.

*Por los motivos consignados en la anterior opinión, procede revocar la sentencia apelada y absolver libremente al acusado.*

El Juez Asociado Señor Blanco Lugo es de opinión que lo procedente es devolver el caso para la celebración de un nuevo juicio en el cual el *issue* sobre el conocimiento por el apelante del estado mental de la perjudicada pueda ventilarse con todos los elementos de prueba de que dispongan el fiscal y la defensa a la luz de la norma que ahora se establece. El Juez Asociado Señor Ramírez Bages concurre con este criterio.

